JAMES H. TICHENOR v. WILLIAM S. WILSON and others.

An injunction to stop chemical works, applied for after the works had been in operation three and a half years, by an individual who had owned and resided on adjoining lands during that time, was denied.

On a bill by an individual, complaining of injury to his property and the health of himself and family by chemical works on lands adjoining the lands on which he resides, and which he alleges to be a nuisance, an injunction should not be allowed unless a clear case of nuisance and of irreparable injury be made out.

The bill, filed April 11, 1849, states, that the complainant for about 16 years past has been, and still is seized and possessed of a farm within the bounds of the city of Newark, of about 40 acres, situate on the south side of the Passaic river and adjoining thereto, a short distance to the eastward of the compact part of the said city. That he has resided on said farm during the period aforesaid, except a few years prior to 1844, and still resides thereon, his dwelling house and out-buildings being situated near the bank of said river; and that in the vicinity of the said dwelling house and on the said farm he had, during the time aforesaid, and still has, a number of fruit, ornamental and shade trees there growing.

That in 1845 he was applied to by William S. Wilson and Frances Brown, of the city of New York, to sell to them a few acres of land on the banks of said river as a site for the erection of a factory for the manufacture of chemical products, and under the general name of chemical works, the said Wilson and Brown alleging and assuring the complainant that the works they designed there to establish and carry on would be perfectly harmless, and would be in no respect injurious to the complainant's property or to the health of his family or that of the neighborhood.

That under such assurances he sold and conveyed to said Wilson and Brown, in February, 1845, rising three acres of land on the bank of said river, a short distance to the westward of his said dwelling house; and that said Wilson and Brown, during

the same year, proceeded to erect a large factory on the land so sold to them by the complainant, and to establish a manufactory of chemical substances of various kinds therein; which said factory and establishment go under the denomination of the Passaic Chemical Works.

That the said Chemical Works are situated about 200 yards from the complainant's dwelling house, and in the immediate vicinity of his said trees.

That since the time of erecting said works they have been and still are in active operation on an extensive scale; and the complainant has been informed and has discovered that the chief business of the said works is the manufacture of soda, ash, and other substances necessary or incidental thereto, or based upon, resulting from or connected with the same, such as sulphuric acid, muriatic acid, bleaching powders, sal-soda, borax and the like.

That the gases, vapors and exhalations proceeding and escaping from the said works and manufacture are very noxious and deleterious, both as to the health of the complainant and his family and neighbors, and also to the surrounding vegetation; so much so that great numbers of the complainant's said fruit, ornamental and shade trees have died or are dying under the effects of the said gases, vapors and exhalations; and the grass, grain, vines, and other articles of vegetable growth, on the complainant's said farm being and growing, have been greatly injured, damaged or destroyed thereby; and the complainant fears and has reason to believe and has no doubt that, if the said establishment and manufacture are permitted to go on, his said grass and other things will continue to be injured, damaged and destroyed, and he will in a short time lose all his said trees, and will be obliged to remove from the vicinity of the said works.

That the said gases, vapors and exhalations are so corrosive in their nature that almost all the metallic substances exposed to the atmosphere in and about his premises, such as farming utensils, cutlery, locks, hinges, nails, and even plate, have become, or when so exposed shortly become corroded and greatly damaged and injured; and that said gases, &c. are so offensive and deleterious that the complainant's family is often obliged, for

protection therefrom, to close the doors and windows of the house, and sometimes even to cover their heads with the bed clothing at nights.

That the said chemical works and manufacture are a nuisance to the neighborhood in which they are situated; and especially to the complainant's said dwelling house and farm, with the premises and appurtenances thereof; and that the complainant has borne the same until his patience is exhausted; and he feels obliged to come to this Court for protection and relief.

That the said works and manufacture have always been and still are conducted and managed for the proprietors thereof, by one Wm. T. Clough, a practical chemist and manufacturer by profession, who, as the complainant has been informed and believes, besides being chief agent and manager of said works, has had and still has some interest in the same or in the profits and emoluments thereof.

That the original and chief proprietors of the said works, the said Wilson and Brown, continued to carry on the same as principal proprietors until about February, 1846, when, as the complainant is informed and believes, they associated with themselves one Robert L. McIntosh, of the city of New York, as a partner, and in connection with him, under the firm of Wilson, Brown & Co., continued to carry on the said works until on or about July 30, 1846, when the said firm of Wilson, Brown & Co., having been unfortunate in business, became insolvent and stopped payment, and, as the complainant is informed and believes, assigned all their property to one Frederick Tracey, of the city of New York, for the benefit of their creditors, and have since that time hitherto carried on and are still carrying on the said works under and by the authority of the said Tracey as such assignee, the said Wm. T. Clough acting therein as before mentioned.

The bill prays that the defendants may answer; and may be injoined from continuing said works, and for such further and other relief &c.

On the reading of this bill, and an application thereupon for a preliminary injunction, the Chancellor directed notice to be given to the defendants.

On a subsequent day, upon notice to the defendants, the application was made.

The answer of the defendants Wilson, Brown and Tracy was read.

Wilson and Brown deny that they or either of them gave any assurances whatever to the complainant respecting the effects of the said works, or whether the same would be injurious to the property of the complainant or to the health of his family or of the neighborhood, and say that neither of these defendants had at that time any knowledge of the practical details of said chemical business, or of the processes used in said manufacture, or the effects thereof ; and that neither of them represented to the complainant that they had such knowledge, or that they were qualified to give such information.

They say that the land sold by the complainant as stated in his bill was of little value to the complainant for farming purposes, and was sold for the express purpose of erecting and carrying on the said chemical works, and that the same was fully understood by the said parties, and that no deception was practised towards the complainant with respect to the effects of said works or the harm or injury that might result therefrom to the complainant or his property.

They say that large improvements were made by said Wilson and Brown, soon after the purchase, (describing them,) costing, with the money paid for the land, $40,000. That the complainant, while said improvements were in progress, was often at the works, and had full knowledge of the value and general nature of said improvements, and made no objection whatever to their erection.

That the said works are now separated from the complainant's said farm by a public highway.

They deny that the gases, vapors and exhalations from said works are noxious or deleterious to the health of the complainant or his family or the neighborhood ; but, on the contrary, they say they have been informed and believe that the complainant and his family enjoy as good or better health than they did be-

fore said works were established; and they severally say, that they have never heard any complaints in the neighborhood of said works of injury to health, nor do they believe the same are at all injurious to personal health.

They deny that the gases are noxious or injurious to the vegetation around said works, and say they have never perceived any such injury; and that, if any such injury has ever resulted to the surrounding vegetation, it has been contingent and temporary and not continued, and is not a necessary consequence of the operation of said works.

They say that the gases proceeding from the manufacture of some of the said chemical products are injurious to vegetation if allowed to escape; but that such escape never occurs except from unavoidable accident or tempest or similar causes beyond the control of those having charge of said works.

They say they have no knowledge that any articles of vegetable growth on the complainant's farm have died, or are dying, or have been injured, damaged or destroyed by said gases, vapors or exhalations; but, on the contrary, they have been informed and believe, that the complainant raised larger crops from his said farm in 1848 than he did in any previous year.

They admit that the said gases are corrosive to metallic substances when exposed to such gases; but they deny that any serious injury has ever resulted to the complainant's property from this cause; and say they have no knowledge that the complainant's family have ever been disturbed in their rest at night, or put to any inconvenience at any time by reason of such gases or vapors. And they deny that the complainant will be under the necessity of removing from his said farm, or that he has been put to any serious inconvenience on account of the operations of said works.

They say that the gases which the complainant in his bill has alleged to be injurious to his property and health are valuable; and that it is the interest of the proprietor of said works to retain them; and that a large proportion of the profits of said works arises from the sale of products formed from said gases when condensed. That similar works are carried on without interruption in this and foreign countries, sometimes in the midst

14

of populous cities, and sometimes in the country in the vicinity of farming lands; and that the machinery and apparatus used in said Passaic Chemical Works are calculated to retain all of said gases, and are capable of preventing their escape entirely; and that the said machinery and apparatus are much more perfect in their construction and operation than they were during the first year said works were established.

They deny that said works are a nuisance in the neighborhood, or to the complainant's property; but say that the same are a general and useful improvement to that part of the said city where they are situated, and particularly to the complainant and his property; that numerous dwelling houses have been erected in said vicinity since the establishment of said works and in consequence thereof; and the value of property generally has been increased thereby in the neighborhood; and that the products of said works are useful articles of manufacture and commerce.

They deny that Wm. T. Clough has any interest in the profits of said works, and say that he receives a stated salary as his only compensation; and that he has not had any other interest therein since July, 1846.

They deny that Robert L. McIntosh now has or ever had any interest in said works.

Wilson and Brown deny that they ever made any assignment of all their property to said Frederick Tracey, or to any other person, for the benefit of their creditors; and deny that said Wilson and Brown are carrying on said works under any authority of said Tracey, or of any other person, as assignee or otherwise for the benefit of their creditors; but the defendants Wilson and Brown say that they and their wives, on the 28th July, 1846, for a valuable consideration, sold and conveyed to the said Frederick Tracey as trustee of Susan T. Wilson and Eliza T. Brown; and that the deed was duly recorded shortly after it was made.

The defendant Tracey says, that he, as such trustee, is now the sole owner of said works and land; and that the de-

fendants Wilson and Brown have no interest whatever in the ownership or profits of said works.

The defendant Wilson says he is the general agent of said Frederick Tracey for carrying on said works ; and that he has a knowledge of the practical details of said business and of the processes used in said manufacture ; which knowledge has been acquired since the said works have been in operation.

The defendants say, that the complainant has never made any complaint to them or either of them of any injury resulting to his property or his or his family's health. And the defendant Wilson says the complainant knew that he, Wilson, was employ. ed about the business of said works ; and that for a period of four months this defendant Wilson resided in the vicinity of said works ; and that the complainant during that time and before and since frequently saw and conversed with him.

The defendants say, that the said works are carried on at a great expense ; and that large numbers of laborers and workmen are constantly employed therein, and a large stock of valuable materials of a perishable nature is always on hand ; and that said works cannot be stopped or suspended without great pecuniary loss to the proprietor and to the workmen and laborers therein employed.

The defendants Wilson and Brown disclaim all right, title and interest in said works.

The answer of William T. Clough admits that the works are conducted and managed by him for the proprietor thereof ; and that he is a practical chemist and manufacturer by profession ; but he denies that he has any interest in the works or in the profits thereof.

He says that at the time of the establishment of said works he had an interest in the same and shared in the profits thereof ; and that such interest continued up to July, 1846, when said works were sold by Wilson and Brown, the original proprietors thereof, to Frederick Tracey as trustee for Susan T. Wilson and Eliza T. Brown, who, this defendant believes, is now the sole owner thereof as such trustee ; and that since the time of such sale and conveyance this defendant has been superintendent of

said works, and that he receives a stated salary as his only compensation for services rendered in said works as such superintendent; and beyond that he has no interest to his knowledge or belief, nor does he claim or pretend to have any right, title or interest in or to the said Passaic Chemical Works, or the matters in the bill set forth, or any part thereof. And he disclaims all interest in the property and in the profits of the manufacture now or heretofore carried on therein since July, 1846, as in said bill mentioned, or any part thereof.

Affidavits were read in support of and in opposition to the motion for an injunction.

*J. P. Bradley* and *A. Whitehead* in support of the motion. They cited *Eden on Inj'n,* 275 ; 2 *Story's Eq.,* sec. 925, 6, and note A ; 2 *Bro. Ch. Ca.* 531 ; 3 *Atk.* 21.

*J. Van Arsdale* and *W. Pennington* contra. They cited *Drury on Inj'n,* 238, 245 ; 1 *Railway Cases,* 120 ; 18 *Ves.* 211, 515 ; *Mitford's Pl.* 145 ; 2 *Story's Eq.,* pages 204, 5 ; 7 *John. Ch.* 315 ; 3 *Myln & Kean,* 169 ; 8 *Cond. Eng. Ch.* 336 ; 19 *Ves.* 617 ; *Eden on Inj'n,* 226, 236 ; 2 *Green's Ch.* 350, 442 ; 1 *Halst. Ch.* 410 ; 3 *Daniel's Ch. Pr. & Pl.* 1860.

THE CHANCELLOR. A sufficient reason for denying the summary action of this Court by injunction is found in the fact, that the works had been in operation three and a half years before the bill was exhibited. It would seem that no very serious consequences to the complainant or his property are to be apprehended from the little further delay which will be caused by leaving him to the ordinary proceedings at law in cases of alleged nuisances. And this course is the more proper in this case from the consideration that the neighborhood, the public, have so long permitted the works to be continued without complaint in the usual way.

Again, on a bill by an individual, complaining of injury to his property and the health of himself and family by such an alleged

nuisance, an injunction should not be granted unless a clear case of nuisance and of irreparable injury be made out. The case, as it appears from the bill, answer and affidavits, fails, I think, in these respects.

Motion for injunction denied.