The Atlantic Refining Company secured a decree restraining the defendants from selling or distributing from their gas station in Margate City motor fuel, oil and grease not manufactured or sold by the complainant.
The parties had entered into a contract providing for the installation upon the defendants' premises of pumps, tanks, pipes, apparatus and driveways suitable for retail sale of the refining company's products. These products were to be exclusively sold by the defendants for a period of five years. The contract also provided for liquidated damages in the event of breach.
At the hearing the provision of the contract relating to the exclusive sale of complainant's product was challenged as not embodied in the original instrument. The proofs appear otherwise and demonstrate that the defendants (who claim an alteration) failed to satisfactorily explain the loss of the original copy of the agreement furnished them at the time of execution. Further, the explanation offered, concerning the imperfect and incomplete copy of the contract furnished at the request of the defendants, was both reasonable and sufficient.
A written contract for the sale of merchandise requires no acknowledgment, nor is it invalidated by reason thereof. Hence, it was quite proper to exclude testimony relating to an acknowledgment since neither the presence nor absence thereof would in anywise affect the validity of the contract.
The defendants' contention that the gasoline furnished was watered and dirty was unsupported by sufficient evidence to justify a rescission if one had been made. Shortly after the installation of the equipment an adjustment was made for a small quantity of gasoline claimed to be watered. The proofs, however, indicate that for six months thereafter and until the commencement of the purchase of the competitor's gasoline no complaints were made. The defendants' *Page 29 
testimony demonstrates that the gasoline was not watered and was of the same quality as when the contract was made.
The contract in no part was altered or varied by mutual consent.
The agreement provides, in part, as follows:
"It is further agreed that if the party of the second part shall at any time cease to purchase all gasoline, motor fuels, motor oils and greases handled and dispensed through the said system from the party of the first part * * * then, and in such case the said party of the second part * * * is hereby declared to be in default hereunder, and the party of the first part may * * * take immediate possession of the said system and remove the same without * * * hindrance * * *, and charge the party of the second part with the sum of nineteen hundred and twenty dollars ($1,920), which, it is agreed, is the fair and reasonable cost of the installation and removal of the system and the cost of the improvements mentioned hereunder * * * or allow said system to remain and charge the party of the second part with the sum of twenty-eight hundred and twenty dollars ($2,820), the agreed value of the system and improvements, and thereupon said sum charged shall immediately become due and payable by the party of the second part, and upon the payment of said sum title to said system is to pass from the party of the first part to the party of the second part."
The foregoing provisions did not defeat the complainant's right to enforce in equity the following provision of the contract:
"In consideration of the investment required, it is agreed that the above location shall be used only for the sale of Atlantic Gasoline and Atlantic Motor Oils."
The relevant adjudications in this state are collected by Vice-Chancellor Leaming in Rittenhouse v. Swiecicki, 94 N.J. Eq. 36,39, where he says: "From these authorities the rule is well defined, to the effect that there must be something apart from the fact that there is a provision for liquidated damages to show that its payment is to be the equivalent for performance. There must be found in the engagement a contemplated alternative whereby the parties are given an option to perform or to refuse to perform and pay the specified damages. That alternative engagement is easily expressed, and if relied upon should appear with reasonable clearness and certainty." *Page 30 
A reading of the contract in suit does not indicate the slightest suggestion of a contemplated alternative agreement.
Finally, it is urged that the court of chancery had no jurisdiction since there was an adequate remedy at law.Feigenspan v. Nizolek, 71 N.J. Eq. 382; affirmed, 72 N.J. Eq. 949,
and Peoples Brewing Co. v. Levin, 78 N.J. Eq. 583, are to the contrary. In the Feigenspan Case, the contract provided as follows: "I will not sell or offer for sale any ale, lager beer or porter in my saloon at number seventy-three Florida St., in the city of Elizabeth, New Jersey, except that manufactured by the said Christian Feigenspan, for the same period as above mentioned."
Vice-Chancellor Henry C. Pitney said: "The covenant here in question is not an uncommon one. Such covenants have been used in England for more than half a century and are in common use in this country, and the question of their enforcement in this court is an important one, and should be considered on its intrinsic merits. * * *
"Coming to our own state we have the case of ManhattanManufacturing Co. v. Stockyard Co., 23 N.J. Eq. 161. In that case there was a contract between the complainant and the predecessor in title of the defendant, by which the complainant had the exclusive right of taking all the blood of animals slaughtered in an abattoir, and also the animal matter and ammonia from the rendering tanks. This contract was broken by the defendant. A bill was filed for an injunction and the injunction was granted. The headnote states that such injunction is not mandatory. It does not require the delivery of the blood, but restrains the defendant from permitting any other but the complainant from taking it. Chancellor Zabriskie holds the remedy at law inadequate, using this language: `For this injury there is a remedy at law, but it is not an adequate remedy. The value of the blood is no measure of the injury, and it is hardly possible to compute the damages which the injury may occasion. And redress at law could only be obtained by a continued series of suits through twenty or forty years of the complainant's *Page 31 
term. It is a case peculiarly proper for the preventive remedy by injunction.'"
The test of the adequacy of the legal remedy the vice-chancellor determined from the following elements:
"First, the difficulty of ascertaining and proving in an action at law the amount of beer which the defendant has sold.
"Second, the profit which the complainant would have made on an equal amount of beer. On this item the difficulty rests in distributing the items of cost, consisting of the interest of the costs of the plant, the wear and tear of it, the cost of administration, the actual cost of material and manufacture.
"In the third place is the consideration of the multiplicity of suits necessary and proper to give the complainant proper satisfaction.
"In the fourth place is the uncertainty of the pecuniary responsibility of the defendant."
The facts in this case bear a complete analogy. There will be just as much difficulty in determining the amount of gasoline purchased from the competitor and the same difficulty in determining the manufacturer's profit. The likelihood of the multiplicity of suits is just as great, and so far as appears there is just as much uncertainty respecting the pecuniary responsibility of the defendants.
The other point strenuously insisted upon by the defendants was that the complainant had an adequate remedy at law, and that therefore an injunction would not lie negatively to enforce the covenant made by the defendants with the complainant, and they relied upon the case of Sperry Hutchinson Co. v. Vine Bros.,66 N.J. Eq. 339. A perfect answer to this contention is found in the fact that this court decided the Feigenspan Case after the decision of the Sperry Hutchinson Case by the court of errors and appeals, not passing the latter sub silentio, but distinctly asserting that it could not be considered as governing the Feigenspan Case, which case was affirmed on appeal inFeigenspan v. Nizolek, 72 N.J. Eq. 949. Therefore we have the court of *Page 32 
errors and appeals which made the law in the Sperry HutchinsonCase, affirming the Feigenspan Case, in which it was held in this court that the Sperry Hutchinson Case did not apply.Peoples Brewing Co. v. Levin, supra.
The decree appealed from will be affirmed.
For affirmance — THE CHIEF-JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.
For reversal — None.