The complainants own a twenty-eight acre tract in East Hanover township, Morris county, which, until recently, the town of Montclair used as a dump for its "debris and refuse," under a five-year contract of September 30th, 1930. The town pays $500 a year for the use, as a dump, and $1,200 a *Page 521 
year for keeping it fit, as a dump. Until January of this year (1933) the dumpings were free of garbage; garbage and ashes were dumped elsewhere. Recently the town advertised for proposals for the removal of the town garbage, ashes and rubbish to the dump, separately, under plan number 1, or collectively under alternate C, and if under alternate C, $15,000 was to be deducted from the bid for separate collection. The town awarded the contract to the defendants C. Egan Sons, at the lowest bid, $290,000, for separate collection, but exercising its option, that the removal be collective, entered into a five-year contract for $275,000. The contractors have been gathering and dumping garbage, ashes and rubbish mixed, and the complainants want it stopped; the mixture of ashes and garbage with debris and refuse interferes with their business of salvaging the junk waste paper, rags, bottles, iron, and other articles from the debris and refuse. The defense is that "debris and refuse" include garbage and ashes, that there is doubt as to the definition of debris and refuse, and the complainants' right to relief being doubtful, an injunction at this posture should be denied under well settled rules of equity.
I have no question regarding the practice, nor any doubt as to the meaning of the town's contract. The town made its own definition, and by that it is bound. For upwards of two years it dumped its garbage and ashes elsewhere; in its specification it is stated that the town has a contract for dumping all its waste material except garbage on the complainants' dump, and that the contractors assume "said contract with all its obligations." They, Egans, contracted to deposit their gatherings upon the dump in strict conformity with the specifications. Further, in its contract with the complainants, the town agreed not to let anyone take cardboards from the refuse, and that it would deliver at least three carloads of ashes per week during December, January, February and March for covering purposes. Why, if ashes were included in the dumpings, should it bind itself to deliver a minimum ashes deposit? There is absolute certainty of contract and there is no doubt of its violation. *Page 522 
The town, to save $3,000 a year, consciously set out to impose on the complainants, and the contractors, not unwilling, for their own gain, joined in the fraud. The unconscionable conduct is so glaring that milder words would not express the truth.
Now the bill does not set out the complainants' cause for action as fully as the facts justify. Much of what has been said is found in the proofs, but unless charged in the bill, proofs of facts cannot be entertained. The bill leaves much to inference. Proper pleading leaves nothing of fact to conjecture. It may be surmised that the dumping was contemplated to yield the complainants a profit out of the junk. That may be a matter of judicial notice, but why not plead it and the irreparable loss? Dumping of garbage may be a nuisance, and in violation of a township ordinance and subject the complainants to penalties as shown by the affidavits, but it is not in the bill. The bill requires amplifying of other bare allegations, now confusing.
Upon proper amendment an injunction will issue against mixed dumpings and if this leads to a refusal to all dumping, a supplemental bill will be entertained to compel the town to perform.
Upon the filing of an amended and supplemental bill and a further hearing, an injunction pendente lite issued restraining the mixing of the gatherings and from dumping them elsewhere than on the complainants' dump. At both hearings the defendants questioned our jurisdiction because of an adequate remedy at law. That point is set at rest by Mr. Justice Bodine in AtlanticRefining Co. v. Kelly, 107 N.J. Eq. 27, in his approval ofManhattan Manufacturing, c., Co. v. New Jersey Stock Yard,c., Co., 23 N.J. Eq. 161, a case similar to this one. There the complainant had the right to all the blood of animals slaughtered in an abattoir. Here the complainants are entitled to all the refuse and debris gathered in Montclair, and unmixed with garbage. In the last cited case Chancellor Zabriskie, on a motion for a preliminary injunction, held the remedy at law for a breach of the contract inadequate and granted an injunction restraining the *Page 523 
defendant from permitting any other than the complainant from taking the blood, saying: "For this injury there is a remedy at law, but it is not an adequate remedy. The value of the blood is no measure of the injury, and it is hardly possible to compute the damages which the injury may occasion. And redress at law could only be obtained by a continued series of suits through twenty or forty years of the complainant's term. It is a case peculiarly proper for the preventive remedy by injunction."