[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 557 
The four plaintiffs are owners of property at the intersection of Luddington Road, Wyoming Avenue and Gregory Avenue, in what is solely a residential neighborhood in West Orange. The plaintiff Sexton owns four lots of vacant land and the other plaintiffs own and occupy dwelling houses. Luddington Road, a street near the division line between the municipalities of West Orange and South Orange, runs generally east and west. It is intersected at right angles by a street which to the north is known as Gregory Avenue, West Orange, and to south, as Wyoming Avenue, South Orange.
From this intersection the defendant, with the consent of the Public Utilities Commission and the municipal authorities, operates two bus lines. One, known as Mountain Bus Route No. 84, is operated along Wyoming Avenue from South Orange to the West Orange town line at Luddington Road, where it terminates. The other line, known as West Orange Bus Route No. 24, is operated between Newark and West Orange, proceeding along Gregory Avenue, West Orange, to Luddington Road, where it also terminates. Thus, the intersection of Luddington Road, Wyoming Avenue and Gregory Avenue is the terminus of two bus routes.
The plaintiffs in their complaint seek an injunction to restrain the defendant from using the public highways and the intersection as a terminus, turning point and lay-over point, alleging a series of acts and course of conduct which, they charge, constitute a trespass, a nuisance and a deprivation of their lawful enjoyment of their property. The application by plaintiffs is for relief pendente lite. On the argument, the plaintiffs submitted photographs, and the defendant, affidavits, from which it appears that the salient facts are not in substantial dispute. It will suffice to refer mainly to defendant's affidavit for a portrayal of the situation existing at the locus in quo. *Page 558 
As previously mentioned, the intersection is used by the defendant as a terminus of two bus lines. Along the southerly route, No. 84, the defendant makes nine trips daily: four trips from 7:30 o'clock to 9:00 o'clock in the morning, four trips from 4:58 o'clock to 6:35 o'clock in the afternoon, and one trip at noontime for the transportation of school children living in the vicinity. Along bus route No. 24, the northerly line, the defendant makes 64 trips daily between 6:46 A.M. and 12:15 A.M., at intervals of 12 minutes during the day and 20 minutes at night, using buses which are approximately 34 feet long. Thus, daily, 73 bus trips start from the intersection at or near plaintiffs' premises. The defendant's affidavit states that "schedule provides for a lay-over at such terminus for periods ranging from 3 minutes to, in some instances, 13 minutes. This lay-over period is necessary for proper operation and is necessitated by delays en route and the tying in of operations on bus Route No. 24, which ties in with the route in question. It is also necessary for the purpose of allowing the operators of defendant's buses to complete their trip reports and inspect the buses at the end of such trips. During such operating there may be short periods of time at which buses on the Mountain Bus Route No. 84 and the route in question are at said terminus at the same time. On other occasions delays due to traffic congestion along the routes may result in one or more buses arriving or being at the said terminus at the same time. * * *" The defendant admits plaintiffs' charge that the West Orange buses back into and upon Luddington Road in order to proceed on the return trip along Gregory Avenue, and says that "This condition is unsatisfactory to the defendant and it has, on numerous occasions, requested the Town of West Orange to permit the defendant to operate along other streets in the vicinity thereof or in other locations along Gregory Avenue in order to make a loop and thus avoid the conditions above referred to, but such Town of West Orange has refused to designate streets for such purpose and the defendant is limited to operate on the route and terminus specified in the municipal consents." *Page 559 
The plaintiffs in their complaint charge that the operation of the bus lines creates loud noises, noxious fumes, an accumulation of oil and grease upon the highways and the intersection, the dumping of refuse upon the highways and premises by the drivers and passengers, resulting in an injurious effect upon the health of the plaintiffs and their families, and deprivation of the lawful enjoyment of their property. Alluding to these charges, defendant's affidavit admits that while the operators of the buses are instructed to shut off their motors at the end of a trip, this practice is not always followed, particularly when lay-overs are short; that any noise or fumes exuding therefrom are the usual incidents resulting from operation of vehicles of such size and class. With respect to the deposit of oil and grease, defendant says "it is common knowledge that all motor vehicles deposit such substance to a more or less degree." The plaintiff Sexton alleges that bus passengers are continuously discharged upon his lands. The defendant does not deny this allegation: it merely says it has no knowledge.
The evolution in the methods of transportation of passengers from stagecoach to motor buses has not changed basic principles concerning the rights of owners of property abutting highways, and the privileges and duties of the common carrier in the use of the highway. The primary purpose of the streets is use by the public for traveling and transportation in a reasonable manner. The control over the use of highways is in the State and the exercise of this power may, in the public interest, be delegated to the municipalities in which they are located. As a duly licensed common carrier of passengers, the defendant has the right to stop its buses in the streets to receive and discharge passengers. Owners of property abutting highways along which the defendant has been duly authorized to operate bus lines, are necessarily, in the public interest, subjected to such inconveniences as may arise from the lawful operation of defendant's business. However, the streets in front of plaintiffs' premises are being used by defendant beyond the bounds of reasonable and legitimate purposes. Situated at the end of two bus lines coming from *Page 560 
opposite directions, the location is being used as a terminal and depot rather than a stopping-place for the receipt and discharge of passengers — 73 buses per day from early morning until after midnight stop, lay-over and start their return trips from this point. Here, besides passengers, the company's employees congregate, complete their reports and inspect the buses. Obviously, for such purposes, public streets should not be used.
From early days to recent times, notwithstanding the development in means of transportation, the law has uniformly declared as wholly unwarranted such use of the public streets as the defendant herein is making. In the old English case of Rexv. Cross, 3 Campb. 225, 170 Eng. Reprint 1362 (1812), Lord Ellenborough said: "The King's highway is not to be used as a stable-yard. It is immaterial how long the practice may have prevailed, for no length of time will legitimate a nuisance. * * * A stage-coach may set down or take up passengers in the street, this being necessary for public convenience: but it must be done in a reasonable time; and private premises must be procured for the coach to stop in during the interval between the end of one journey and the commencement of another. No one can make a stable-yard of the King's highway."
In similar tone, Vice-Chancellor Bird in Lippincott v.Lasher, 44 N.J. Eq. 120 (Ch. 1888), said: "The public highway is only designed for the use of the public as a passageway — as a means of communication between different points. It never was intended or designed to be used as a stable or as a private yard or other enclosure for the convenience of men of business."
The Court of Errors and Appeals in Pennsylvania Railroad Co.v. Angel, 41 N.J. Eq. 316 (E. A. 1886), said: "The use of the avenue (is) for the purposes of a way, not for the purposes of a stationyard. The primary privilege given is that of passage; this and its reasonable incidents cover the whole scope of the grant. The right of storing engines and cars either for a longer or a shorter period, the right of making up or breaking up trains, are not embraced in such a *Page 561 
concession. These are strictly station and terminal purposes and by providing for station yards the legislature has indicated its intention that business of that nature should be transacted there. * * * Having a right of passage there, it used its tracks as though they were within its terminal yard, and so used them constantly in its every-day concerns. For this there is no legislative or municipal authority."
More recently, in a case involving facts similar to those here presented, Livingston v. Stoddard, 100 N.J. Eq. 578 (E. A. 1927), the court adopted the opinion of Vice-Chancellor Lewis, who said "It appears that the defendant did not make use of the highway in front of complainant's property simply to receive and discharge passengers, but lingered there for an hour at a time — in fact, the bill says that his buses were continually in front of complainant's premises, one departing being relieved by another. If all this be true, this destroyed the primary object of the highway, i.e., the passage of the public and, in fact, usurped all the rights of the complainants in the highway in front of their property. It is difficult to conceive of any right by which the defendant could appropriate a public street in this manner." To the same effect, see McDonaldv. Newark, 42 N.J. Eq. 136 (Ch. 1886), and Halsey v. RapidTransit Street Railway Co., 47 N.J. Eq. 380 (Ch. 1890).
If the public and a public utility were not involved, I would grant an injunction pendente lite, but under the circumstances I am reluctant to issue a restraint which might disrupt or harmfully affect the traveling public. In considering the issuance of an injunction which affected public interests, Vice-Chancellor Backes in Rowland v. N.Y. Stable Manure Co.,88 N.J. Eq. 168 (Ch. 1917), said: "The discretion exercised by courts of equity in refusing an injunction on the ground of greater injury to the defendant, is properly restricted to applications pendente lite. Tichenor v. Wilson, 8 N.J. Eq. 197; Higgins v. Water Co., supra (36 N.J. Eq. 538); Simmonsv. Paterson, 60 N.J. Eq. 385. But, on final hearing, if the nuisance is clearly established, and it appears that it is causing substantial, material and irreparable injury *Page 562 
to the complainant, for which there is no adequate remedy at law, the law is settled in this state, and by the great weight of authority in other jurisdictions, that the complainant is entitled to relief by injunction, irrespective of the resulting damage to the defendant."
Accordingly, I shall withhold the granting of a preliminary restraint, but if upon final hearing the nuisance is established, an injunction will issue. In the interval the defendant should seek means of removing the nuisance.