17 N.J. Super. 328 (1952)
85 A.2d 815
THE PORT OF NEW YORK AUTHORITY, PLAINTIFF,
v.
THE CITY OF NEWARK, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 4, 1952.
*330 Mr. Russell E. Watson, attorney for the plaintiff.
Mr. Charles Handler, attorney for the defendant.
FREUND, J.S.C.
The Port of New York Authority instituted this proceeding to compel the City of Newark and its officials to perform an express agreement to discontinue dumping garbage and refuse upon lands commonly referred to as the Newark Airport area leased by the city to the plaintiff.
The material facts are undisputed. Briefly stated here, later detailed, the proofs establish an unequivocal agreement in the lease whereby the city covenanted to cease dumping not later than July 21, 1949; that it requested, and was granted, extensions of time, the last being until December 31, 1949; that the city breached its agreement by continuing to dump; and that its acts constitute a serious hazard to the operation of the premises as an airport.
The defendant offers no real defense. In an answer setting up ten separate defenses, it challenges the plaintiff's right to relief solely on technical grounds. It asserts that it will be inconvenienced by the necessity of finding other dumping grounds. At the trial the defense offered but one witness; he testified that the defendant was endeavoring to find, but had not yet found, other premises and means for disposal of the garbage.
*331 It is well known that the Port of New York Authority is a bi-state agency of the States of New York and New Jersey, created in 1921 by compact (Laws of New York, 1921, chapter 154, amended Laws of 1930, chapter 419; Laws of New Jersey, 1921, chapter 151, R.S. 32:1-1 et seq.), approved by Congress on August 23, 1921 (42 Stat. 174), and in the interests of the public performs governmental functions projecting beyond state lines. Helvering, &c., v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938); Miller v. Port of New York Authority, 18 N.J. Misc. 601 (Sup. Ct. 1939); Howell v. Port of New York Authority, 34 F. Supp. 797 (D.N.J. 1940); Commissioner of Internal Revenue v. Shamberg's Estate, 144 F.2d 998 (C.C.A.2d 1944), certiorari denied 323 U.S. 792 (1945); Sullivan v. Port of New York Authority, 134 N.J.L. 124 (Sup. Ct. 1946).
The States of New Jersey and New York adopted a plan for the development, maintenance and operation of air and marine terminal and transportation facilities in the Port of New York District, and to effectuate it adopted concurrent legislation. New Jersey, chapter 43, Laws of 1947, R.S. 32:1-35.1 to 32:1-35.17, relating to air terminals, and chapter 44, relating to marine terminals, R.S. 32:1-35.28 to 32:1-35.36, amended by chapters 212 and 214, Laws of 1948, R.S. 32:1-35.1 et seq.; New York, chapter 802, Laws of 1947, as amended by chapter 785, Laws of 1948; chapter 631, Laws of 1947, as amended by chapter 784, Laws of 1948. Pursuant thereto, on October 22, 1947, the plaintiff and the City of Newark entered into a written agreement pertaining to the Newark Airport and Port Newark Marine Terminal. The defendant municipality leased to the plaintiff, and the plaintiff hired from the defendant, under a long-term lease, certain lands and premises particularly described in the agreement and outlined on accompanying maps. The plaintiff has been in possession of the property since March 22, 1948, and in compliance with the terms of the lease has paid to the defendant a minimum annual rental of $100,000. *332 For the rehabilitation and development of the Newark Airport and Port Newark, the plaintiff has issued and sold bonds for $27,000,000, secured by a pledge of the revenues of the two terminals. It has spent and entered into contracts involving expenditures of $20,300,000. The lease made explicit provision for discontinuance of dumping of garbage and refuse upon the demised premises by the defendant not later than 16 months from its effective date, i.e., July 21, 1949. Section 41 provides as follows:
"The City shall terminate as of a date not later than six months after the effective date of the lease, all permits issued to third parties to dump refuse and trade waste on the demised premises.
The Port Authority agrees, however, to permit the City to continue the dumping of refuse on the demised premises for a period not to exceed 16 months after the effective date of the lease, and the City agrees to cease and discontinue all such operations after that date. * * *"
Cognizant of its obligation to discontinue dumping on July 21, 1949, but finding itself unable to do so, the defendant requested an extension of time in a letter dated June 29, 1949, from Mayor Ralph A. Villani to the plaintiff. He wrote as follows:
"The terms of the lease between the Port of New York Authority and the City of Newark require that within a very short period, the City must discontinue dumping refuse material on the Airport area.
A study of the City's disposal problem has been made by me and the engineers of the Bureau of Sanitation for a long time and particularly since the signing of the lease. As you know, any change in the method in disposal of the huge volume of waste produced daily requires considerable planning and the expenditure of large capital sums for facilities such as incinerators.
It is my intention to request the Board of Commissioners to provide the necessary financing for the construction of an incinerator to solve the disposal problem. This request will be made very shortly.

* * * * * * * *
I would therefore request that the Port of New York Authority approve the continuation of the dumping of City refuse for an additional period of 18 months on such areas as will not interfere with the projected plans of the Authority."
In reply, the plaintiff called the attention of the municipality to the danger and hazard caused to plane operations *333 by the dumping, but granted an extension of 60 days to September 21, 1949. On September 14, 1949, the mayor by telegram and letter requested a further extension to December 31, 1949. The plaintiff granted an extension to November 21, 1949, and when on that date the city had made no other arrangements, granted a final extension to December 31, 1949. A resolution was adopted by the board of commissioners of the municipality which recited the agreement of the parties and the various extensions, and empowered the mayor to execute the necessary supplemental agreement. Despite these agreements, the defendant has continued to dump refuse on the airport area.
That the dumping of garbage and refuse jeopardizes the safe operation of the airport is charged by the plaintiff and not denied by the defendant. The garbage creates distasteful and odorous fumes, a constant source of spontaneous combustion and attendant smoke, and provides a breeding and feeding ground for flocks of seagulls, which obscure visibility and adversely affect flight operations. Additionally, since the garbage and refuse is not suitable fill for the construction of runways, the plaintiff in enlarging the airport facilities will incur greatly increased costs in removing the accumulated refuse.
The plaintiff has established an unqualified agreement on the part of the defendant to cease dumping on the date specified in the lease. The defendant without any misapprehension or uncertainty whatsoever about its undertaking in this respect and, indeed, in recognition thereof, requested and was granted extensions of time. Yet, in utter disregard of its written obligation, it has continued to dump garbage and to trespass upon the facilities of the airport. That the plaintiff, under these circumstances, is entitled to injunctive relief, even though the defendant is a municipality, cannot be gainsaid, unless the agreement is invalid. Earrusso v. Montclair, 112 N.J. Eq. 520 (Ch. 1933), modified on other grounds, 114 N.J. Eq. 12 (E. & A. 1933). In that case, the court restrained the defendant municipality from dumping *334 garbage on complainant's premises in violation of a contract. In the course of his opinion, Vice-Chancellor Backes made the following remarks which the Court of Errors and Appeals quoted in its opinion and which in my judgment are pertinent here:
"There is absolute certainty of contract and there is no doubt of its violation. The town * * * consciously set out to impose on the complainants. * * * The unconscionable conduct is so glaring that milder words would not express the truth."
The defendant's assertion that it has not yet found other premises for use as a dumping ground and that it will be inconvenienced by the necessity of finding other premises, even if true, offers no justification for denial of relief. Other property for dumping purposes is available to the City of Newark, and it has under consideration other methods of disposing of its garbage and refuse. These may be financially burdensome, but not a reason for withholding relief.
"The discretion exercised by courts of equity in refusing injunctions on the ground of greater injury to the defendant, is properly restricted to applications pendente lite. Tichenor v. Wilson, 8 N.J. Eq. 197; Higgins v. Water Co., supra, [36 N.J. Eq. 538]; Simmons v. Paterson, 60 N.J. Eq. 385. But, on final hearing, if the nuisance is clearly established, and it appears that it is causing substantial, material and irreparable injury to the complainant, for which there is not adequate remedy at law, the law is settled in this state, and by the great weight of authority in other jurisdictions, that the complainant is entitled to relief by injunction, irrespective of the resulting damage to the defendant." Rowland v. N.Y. Stable Manure Co., 88 N.J. Eq. 168 (Ch. 1917); Sexton v. Public Service Coordinated Transport, 5 N.J. Super. 555 (Ch. Div. 1949).
Moreover, the plaintiff has paid to the defendant the yearly rental of $100,000 pursuant to the lease. Even after the institution of this suit and the interposition of defenses, Meyer C. Ellenstein, Commissioner of Revenue and Finance of the City of Newark, under date of June 27, 1951, wrote to the plaintiff, asking it to make an installment payment due under the lease directly to the United States Government in defendant's behalf. He wrote:
*335 "Pursuant to paragraph 1 of the Second Supplemental Agreement to our lease with you, this is to officially request you to pay directly to the United States Government, on behalf of the City, the installment now due, as described in Section 16, on Page 15, of the original lease. * * *"
Neither in its answer nor at the trial did the defendant offer to return the benefits which it has received, and is still receiving, under the lease. This seems to me to be a complete answer to the defendant. The case might well be disposed of by the application of the doctrine of estoppel. In West Virginia v. Sims, 341 U.S. 22, 95 L.Ed. 713 (1951), Mr. Justice Jackson said in a concurring opinion, at page 726:
"Estoppel is not often to be invoked against a government. But West Virginia assumed a contractual obligation with equals by permission of another government that is sovereign in the field. After Congress and sister States had been induced to alter their positions and bind themselves to terms of a covenant, West Virginia should be estopped from repudiating her act. For this reason, I consider that whatever interpretation she may put on the generalities of her Constitution, she is bound by the Compact, and on that basis I concur in the judgment."
In City of Camden v. South Jersey Port Commission, 4 N.J. 357 (1950), Chief Justice Vanderbilt said, at page 374:
"There is here a valid contract that was entered into by the city with its eyes wide open. That the plaintiff may not now be receiving benefits which it considers equal to the contributions it is required to make, is not sufficient basis for refusing to compel performance. The plaintiff is still receiving and will continue to receive benefits from the project, the exact nature and extent of the benefits being difficult to accurately ascertain. If the city were now to be relieved of its obligations, the entire project would come to a halt and the rights of the citizens and third parties who had relied upon it would be irreparably injured, including the rights of the bondholders whose interests total over $2,400,000."
As previously mentioned, the defendant raises highly technical defenses, typical of which are the following points taken from its brief:
*336 "1. The lease is invalid because the authority to execute the same was ordered by ordinance rather than resolution.
2. The purported enabling acts are unconstitutional, being special laws in a field where only general laws are authorized.
3. Even if authorization of the agreement by resolution of the governing body could be otherwise justified, this agreement is ultra vires notwithstanding, because the resolution was not filed with the municipal clerk for public inspection at least two weeks before its adoption."
The defendant contends that the procedures followed prior to the execution of the lease were not in conformity with the Home Rule Act, under which the defendant City of Newark is governed. Specifically, for example, R.S. 40:74-1 provides in part, "* * * no franchises, or right to occupy or use the streets, highways, bridges or public places in any municipality shall be granted, renewed or extended except by ordinance," and in the instant case, the consent for the execution of the lease was given by "resolution" passed by the commission of the defendant municipality. Similar contentions have been advanced in numerous other causes and have been rejected by the courts. In City of Newark v. N.J. Turnpike Authority, 7 N.J. 377 (1951), appeal dismissed by the United States Supreme Court, November 13, 1951, Chief Justice Vanderbilt, characterizing such arguments, said: "These assertions are so devoid of merit as to approach the specious and may be summarily dealt with."
Insofar as the execution, validity and effect of the lease are concerned, the procedures and provisions of the Home Rule Act are inapplicable and have been superseded by the specific enactments of New York and New Jersey for the maintenance and operation of air and marine terminals above referred to. The pertinent legislation, chapter 43, Laws of 1947, sec. 8(a), R.S. 32:1-35.8(a), provides as follows:
"Notwithstanding any contrary provision of law, every municipality in the Port of New York District is authorized and empowered to consent to the use by the Port Authority of any air terminal owned by such municipality or of any real or personal property owned by *337 such municipality and necessary, convenient or desirable in the opinion of the Port Authority for air terminal purposes, including such real property as has already been devoted to a public use, and as an incident to such consent, to grant, convey, lease, or otherwise transfer to the Port Authority any such air terminal or real or personal property, upon such terms as may be determined by the Port Authority and such municipality. * * *
Such consent shall be given and the execution of any agreement, deed, lease, conveyance, or other instrument evidencing such consent or given as an incident thereto shall be authorized in the manner provided in Article XXII of the Compact. * * *"
Article XXII of the Compact between New York and New Jersey, dated April 30, 1921 (R.S. 32:1-23), stipulates:
"* * * in the case of any municipality now or hereafter governed by a commission, whenever the commission thereof shall by a majority vote pass such a resolution; and in all other cases whenever the body authorized to grant consent to the use of the streets or highways of such municipality shall by a majority vote pass such a resolution."
The power of the Legislature to supersede provisions of the Home Rule Act is definitely settled. N.J. Interstate Bridge, &c., v. Jersey City, 93 N.J. Eq. 550 (Ch. 1922); Stern v. Mayor, &c., Jersey City, 8 N.J. Misc. 307 (Sup. Ct. 1930); Shea v. Ellenstein, 118 N.J.L. 438 (Sup. Ct. 1937); DeMuro v. Martini, 1 N.J. 516 (1949); City of Camden v. South Jersey Port Commission, supra; Mayor, &c., Elizabeth v. N.J. Turnpike Authority, 7 N.J. Super. 540 (Ch. Div. 1950); City of Newark v. New Jersey Turnpike Authority, supra.
The defendant's contention that the air and marine terminal statutes are special laws regulating the internal affairs of municipalities is utterly without merit. Chief Justice Vanderbilt in the Camden case, supra, said:
"Next, no argument at all is made by the city to support its contention that the statute or the contract is a regulation of the internal affairs of the city. Suffice it to say that there has been no interference in the internal affairs of the plaintiff; it was left completely free to accept or reject the benefits which might accrue to it under this act."
*338 Neither does the legislation violate the due process or the commerce clauses of the Federal Constitution. It is fundamental that a municipality is a creature of the state, subject to abridgement of property rights by the sovereign who conferred them.
There is no need to consider separately the other equally technical points raised by the defendant. Suffice it to say that they, too, are without merit and that I am convinced they were raised merely to defer the day of judgment.
In accordance with the terms of the lease, the defendant will be directed to discontinue dumping garbage and refuse in the demised area. However, the operation of the judgment will be suspended for 30 days from its entry to enable the defendant and its officials to make arrangements to otherwise dispose of its garbage and refuse and voluntarily discontinue their wrongful acts.