Higbee & Riggs *v.* Camden and Amboy R. and T. Co.

HIGBEE & RIGGS *v.* THE CAMDEN AND AMBOY RAILROAD AND TRANSPORTATION COMPANY.

1. An injunction will not be granted when the right of the complainant on which the relief is founded, or at least the principle of law on which it depends, has not been settled by the courts of law of this state.

2. An injunction will not be granted when the complainant has a full and complete remedy at law.

3. Nor where the injury complained of is slight compared to the inconvenience to the defendant and the public, that would result from the injunction.

4. Where for a period of twenty years a railroad company had been permitted to occupy the street of a city in front of the complainants' premises, for a railroad track, under a claim of right, without remonstrance or complaint by the complainants, or those under whom they claim, and the railroad company, by such acquiescence, was induced to enter into a lease with the city, binding itself to build a depot and platform, of a width that could add but little to the inconvenience to which the complainants were subjected by the occupation of the street by the track, and from which the company cannot be released, equity will not interfere to prevent the erection.

The cause was argued upon final hearing on the pleadings and proofs.

*Mr. James Wilson,* for complainants.

*Mr. J. P. Stockton,* for defendants.

THE CHANCELLOR.

The complainants are owners of a lot in the city of Burlington, having one front on Broad street. The railroad of the defendants was laid along and upon Broad street, near the centre of it, in front of this lot; it has been continued there for more than twenty years. The common council of the city of Burlington recently authorized the defendants to erect a platform and depot in this street in front of the complainants' lot. The defendants were preparing to erect this

platform and depot in such manner that it would occupy part of the street in front of this lot, between it and the middle of the street, so as to leave only twenty-four feet of the roadway between the curb-stone in front of the lot free for the passage of carriages. The roadway there between the curb-stones is seventy-two feet wide, and the whole width of the street one hundred feet.

A preliminary injunction was granted, on the ground that the complainants owned a lot bounded on the street, and and were, therefore, presumed to own the fee of the soil in the street to the middle of the street, subject only to the easement of the public street, and that this land was being taken without compensation first made. 4 C. E. Green 276. The view taken was that where a lot was bounded on a street, it would be presumed to extend to the middle of the street, unless the presumption was rebutted, or the terms of the deed excluded the street.

In the testimony the defendants have attempted to rebut the presumption, by showing that this street was granted and laid out by the proprietors of West New Jersey, under the proprietary government. These proprietors in their grants and concessions, (*Leaming & Spicer* 390) state : " We do also grant convenient portions of land for highways and for streets not under one hundred feet in breadth in cities, towns and villages." This does not grant this particular street to the city of Burlington, nor is it granted by the original concessions of the lords proprietors before partition. *Leaming & Spicer* 25, § 3. The act for settling the town of Burlington, passed in 1693, (*Leaming & Spicer* 523) and the survey under it, are relied on. The act directs a survey to be made of the town of Burlington, but it directs that "the streets of said town shall be laid out in the same places as formerly, and no other." The defendants produce from the surveyor general's office at Burlington, an old map dated in 1694, as the survey made under that act; this shows Broad street laid out as one hundred feet wide. But assuming that the genuineness of this map is sufficiently shown, and that it is the original survey,

authorized by that act, it only proves that Broad street was laid out before 1693, as it now is. Provision had before that been made for laying out highways over lands of individuals, and making compensation. *Leaming & Spicer* 440, § 18, and 492, § 1. This street may have been laid out over lands before appropriated in such manner that the owner retained the fee.

The case on part of the complainants stands now as it did upon granting the preliminary injunction. The deed to them is in evidence; except the recital of the boundary it contains nothing to show that the title extends to the middle of the street. The description in the deed as to the lines in question begins from the end of the fourth course, and is as follows: "thence (5) along the line of a lot conveyed to William H. Lloyd, three hundred and eight and a half feet, to his corner *on* Broad street; thence (6) eastwardly, *along* Broad street eighty-six and one third feet, to the corner of the surveyer-general's office, (that is the extreme northwesterly corner); thence (7) south, along said office," &c. There is no evidence to show whether Lloyd's corner or the northwest corner of the surveyor-general's office, is on the side or in the middle of the street. If it had been shown by proof that Lloyd's corner, or the end of the fifth course, was on the south side of Broad street, and that the northwest corner of the surveyor-general's office was on the south side, the terms of the description might have been held to exclude any part of the street.

But the assumption made on granting the preliminary injunction is one not warranted by any decision of the courts of law in this state, and that assumption constitutes the whole of the title of the complainants, upon which they can have any relief in this suit. Since then, it has been held by the Court of Appeals that an injunction ought not to be granted by a court of equity, where the right of the complainant on which the relief is founded, or, at least, the principle of law on which it depends, has not been settled by the courts of law of this state. This was the view taken by that

2 o *

court, in the case of *Prudden* v. *The Morris and Essex R. Co.*, decided at March Term, 1869. The preliminary injunction in this case was granted prior to that decision, on the assumption that if the legal right of the complainant seemed clear to the Chancellor, it was his duty to protect it. This case comes within the principles of that decision. It has not been settled in New Jersey, by decisions of the courts of law, that a conveyance bounding on a highway, in the terms of this deed, will extend to the middle of the highway.

There are on this subject, so far as I have been able to ascertain, but two decisions in the courts of law in this state. The first is the case of *Winter* v. *Peterson*, 4 *Zab.* 524. In that case, the line is described as commencing to run along the middle of the road, and then as running along the road for the two succeeding courses. That case differs so materially from this in the words of description, at the bottom of the question, that it cannot be held as deciding that a boundary " on " or " along " a road extends to the middle of the road, for the words there expressly called for the middle. The terms used in announcing the decision of the court would cover this case. But the decision in the other case alluded to, takes away the force of the mere dicta in this. In *The Hoboken Land and Improvement Co.* v. *Kerrigan*, 2 *Vroom* 13, the beginning corner of the lot granted was on the side of the highway; the other courses called for no monuments, and the highway was not again alluded to. The defendant contended that the survey, by the description, carried the last course into the road, or to the side of it. The plaintiff contended that it did not. The Justice, at the Circuit, charged " that it requires express words in the deed to exclude the road; this deed does not contain any such. If the deed goes up to the road, it goes to the middle of it." Justice Elmer, in delivering the opinion of the court, says: " It was correctly stated, in the case of *Winter* v. *Peterson*, that the inference or presumption of law is, that a conveyance of land bounded *on* a public highway carries with it the fee to the centre of the road, as part and parcel of the grant,

unless, by the terms of the description, the road is necessarily excluded, or at least something appears to rebut the presumption." This would indicate that the view of the court was, that any lot bounded on a street would carry the fee to the centre of the street. But, in deciding the question then before the court, he says: "And, even if the tract can be run so that the last course and distance will correspond with the line of the highway, that alone will not warrant the presumption that it was intended to convey the land to the middle of the highway. The real question was, whether the words of the deed could be so interpreted as to warrant the inference that there was any intention to extend the boundary, as described, beyond its prescribed limits. It is not a case requiring words to exclude the highway."

This plainly places the point in question upon the intention to be derived from the deed, and, although consistent with the position quoted from *Winter* v. *Peterson*, yet it limits the apparent generality of that position to the case mentioned in it, where lands are generally bounded on a highway, but does not include in it cases where lands bound on a highway, with words that may render it doubtful whether it was the intention to extend the boundary to the middle of it. Consistently with these decisions, the courts of law may hold that when a monument is called for, such as the corner of a lot, or of a building, or the end of a course at a certain distance from a monument, and the point so called for is in the side of the street, and not the centre, that the presumption of an intention to convey to the middle of the street will not arise. In the absence of any such decision in the courts of law, and especially where the question is one which, as in this case, may admit of discussion, a court of equity will not be permitted to enforce a right depending upon such question, by any injunction, either temporary or permanent, but will require the right to be first settled at law.

The dictum of Chancellor Green, in *Hinchman* v. *Paterson Horse Railroad Co.*, 2 *C. E. Green* 82, that "the pre-

sumption of law is, that the owner of land on each side of a street own the lands to the middle of the street," although upon a point which arose in the cause, was not the foundation of his decision, and at best was but a decision of an equity judge, and as it is contrary to the express holding of the Supreme Court in Kerrigan's case, that the presumption did not arise from the fact of bounding on the highway, but depends on the question whether the words of the deed warranted the inference of intention to extend the boundary, that opinion cannot aid in this question before this court.

The questions of law and fact upon which the title of the complainants depends might be determined by an issue to the courts of law. But other questions arise in the cause, which would prevent the complainants from obtaining relief here, as the law is now settled, even if their title was settled.

They have a full and complete remedy at law. If they own the fee to the middle of the street, ejectment will lie against any one occupying it by a platform or depot, and their title will be most appropriately tried before a jury in a court of law. And the injury in this case by suffering the erections to stand until a judgment at law, is neither very great or irreparable. Complainants are not shut out from access to their lot; there is a way left in front twenty-four feet wide, and they have also access to the lot by an unobstructed side street, the same as in Prudden's case. The injury to the complainants, by occupying with a depot and platform ten or twelve feet of the land in the centre of the street, which they cannot use or occupy except for passing over, is slight when compared to the inconvenience to the defendants, and the public, by prohibiting the erections needed for the convenient transportation of passengers. Either of these grounds are held sufficient to prevent the interference of a court of equity by the extraordinary power of injunction.

The preliminary injunction in this case was issued prior to the decision by the Court of Appeals, in the case of *Prudden* v. *The Morris and Essex R. Co.*, and like the injunction

in that case, under the mistaken impression that it was the duty of this court to grant it, if in its own view of the case the complainant clearly had the right for which protection was sought. And until that decision, it had been the practice of courts of equity to interfere, by injunction, in cases of taking private property by corporations, without compensation first made, whenever it was required first to be made by law or constitutional provision; and this, not on the ground of the injury being irreparable, or that there was no redress at law, but on the grounds : That it is the only protection that the citizen can have in the great privilege now supposed to be guaranteed by the constitution, that his property should not be taken by private corporations for public use, without compensation *first* made to him. That all other modes of redress are for compensation *after* it is taken, and place him where he would have stood without this provision of the constitution, and require him to pursue his property in the hands of the wrongful taker, by the slow and expensive steps of a suit at law. That the strong arm of this court is the only remedy to secure a right of sufficient importance to warrant a special provision in the constitution, the right of being *first* paid, and therefore of sufficient importance to call for the only protection practicable; this protection was thought to be at least as necessary when the value of the property taken was small, and its importance to the party seizing it great, as in cases where its value would warrant the expense and vexation of pursuit; as necessary for the cottage grass plat as for the palatial park. And that no mere wanton and unprovoked injury was required to invoke the protective power of this court, or to entitle the owner to retain his property until *after* compensation made.

The decision in the case last mentioned has corrected these erroneous views, and must control the practice in such cases. The right there claimed was incorporeal property; and here it is land subject to the easement of a public highway; both are property, subject to, and guaranteed by, the

same law. The injunction in that case, was set aside on these grounds, without regard to, or examining the question of the complainant's right.

There is another aspect of this case which must, on the principles there declared, prevent relief here. For a period of upwards of twenty years, the defendants have been permitted to occupy the street for the purposes of their railroad track, under a claim of right, without remonstrance or complaint, so far as appears, by the complainants or those under whom they claim. The track was laid in front of their premises. They have silently acquiesced ever since. The construction of a depot and platform occupying a width of ten or twelve feet, cannot add much to the inconvenience to which they were subjected by the occupation of the street by the track. And it was held that when a person encourages another, though passively, by like acquiescence, to acquire title and expend money, on the assumption that such right will not be asserted, he will not be permitted in a court of equity to assert his right to the prejudice or injury of those who have been encouraged by his acquiescence.

If this is the rule as to acquiescence in a case where the land was purchased before any track was laid or could be acquiesced in, and where the application to restrain from further appropriation was made before any money was expended in the additional track proposed, it must certainly prevent the interference of this court in this case, where, by such acquiescence, the defendants have been induced to enter into a lease with the city of Burlington, binding on them, and from which they cannot be released.

The bill must be dismissed.