Sternberg v. O'Brien.

## LAZAR STERNBERG

*v.*

## JAMES O'BRIEN.

1. Contracts in restraint of the right to labor are invalid unless the restraint they impose is partial and reasonable.

2. And the test to be applied in deciding whether the restraint is reasonable or not, is to consider whether it is only such as is necessary to afford a fair protection to the interest of the party in whose favor it is given, and not so large as to interfere with the interest of the public.

3. The ordinary judicial remedy for a breach of contract is an action at law, and in cases where that remedy will fully answer the purposes of justice the law courts have exclusive jurisdiction.

4. A court of chancery can give no remedy for a breach of contract, except in cases where the remedy at law will not answer the purposes of justice, but is plainly inadequate.

5. And this rule must control the action of the court at all stages of a cause, regardless of whether relief by injunction be asked for at the commencement of the suit or on final hearing.

On final hearing on bill, answer and proofs taken orally,

*Mr. Frank E. Bradner,* for the complainant.

*Mr. Louis Hood,* for the defendant.

VAN FLEET, V. C.

The main question presented for decision in this case is, whether or not the complainant is entitled to a decree restraining the defendant from violating his contract. The case is before the court on final hearing. The parties to the suit, on the 20th day of January, 1891, made a contract under seal, by which the complainant employed the defendant in the capacity of collector in the installment clothing business, carried on by the complainant in Newark and Jersey City, at a weekly salary of $20, and agreed, in addition, to keep the defendant in his employ, as collector, so long as the defendant performed his work honestly and faithfully and to the satisfaction of the complainant; and the defendant agreed, in consideration of such employment, that during its continuance, and for one year after he ceased to be employed by the complainant, whether he voluntarily abandoned such employment or was discharged therefrom, he would not engage in, or be concerned or interested in the installment clothing business, in the city of Newark or Jersey City, on his own account, or as the agent or employe of any other person, in any capacity. The defendant served the complainant under the contract from its date until the 23d day of February, 1891, a period of between four and five weeks, and then abandoned his service, and shortly afterward accepted employment, as collector, from a person carrying on a rival business in Newark. It is undisputed that the defendant has, without cause, violated one of the most important provisions of his contract. Against the injury which is thus inflicted the complainant asks to be protected by injunction. He wants the defendant prohibited from being employed, in any capacity in the installment clothing business, by any person carrying on that business either in Newark or Jersey City, for the space of one year from the time the defendant left his employ.

The relief asked is resisted on several grounds. The defendant says, first, that the contract in question is void, because the restraint which it imposes upon him is unreasonable; in other words, that it is greater than is necessary for the protection of the complainant. The law is settled, that a contract in restraint of labor, which seeks to prevent one of the contracting parties from exercising his skill or labor generally, without limitation as to place or time, or which attempts to put a restraint upon his right to labor or to exercise his skill greater than is necessary for the fair protection of the other party to the contract, is void. "Public policy," said Vice-Chancellor James, afterwards one of the lord justices of the court of appeal of England, in *Leather Cloth Co.* v. *Lorsout, L. R. (9 Eq. Cas.) 345, 354,* "require that every man shall be at liberty to work for himself, and shall not be at liberty to deprive himself or the state of his labor, skill or talent by any contract that he enters into." "The law," said Best, C. J., in *Homer* v. *Ashford, 3 Bing. 322, 326,* "will not permit any one to restrain a person from doing what the public welfare and his own interest require that he should do. Any deed, therefore, by which a person binds himself not to employ his talents, his industry or his capital in any useful undertaking in the kingdom would be void, because no good reason can be imagined for any person imposing such a restraint on himself." "So far has this principle been carried," said Chief-Justice Beasley, in *Brewer* v. *Marshall, 4 C. E. Gr. 537, 547,* "that even in cases in which the restraint sought to be imposed is only partial, it has been repeatedly held that such agreement will be void, unless it be reasonable, and that no such agreement can be reasonable in which the restraint imposed on the one party is larger than is necessary for the protection of the other." The test which the law prescribes in all such cases is this: the restraint, in order to be valid, must be only such as is necessary to afford a fair protection to the party in favor of whom it is given, and not so large as to interfere with the interest of the public. This is the principle which controlled the decision in *Mandeville* v. *Harman, 15 Stew. Eq. 185,* and must, I think, be adopted as the rule of decision in this case.

The contract under consideration, it is insisted, violates this principle. It is said, that while the contract gives the defendant employment in only one capacity, or of but a single kind, it attempts to prohibit him, for a year after he has ceased to be employed by the complainant, from accepting, within the cities designated, and from a certain class of persons, employment of any kind whatever, though such employment is not in the installment clothing business but entirely outside of it. Put in another form, the fault imputed to the contract is this : though employed in a single capacity, in a particular business, the defendant cannot, for a year after he has ceased to be employed by the complainant, take employment as a coachman, waiter or in any other capacity, from any person engaged in the installment clothing business, in either Newark or Jersey City, without committing a breach of his contract. To me it seems to be entirely plain that if the contract is subject to the vice which is thus imputed to it, that it must be held to be invalid. If it be true that it restrains the defendant from doing work which, though done for another person carrying on the same business that the complainant carries on, can in no event and under no circumstances result in loss or injury to the complainant, it is clear beyond dispute that the restraint which it imposes on the defendant is larger than the fair protection of the complainant requires. It is manifest that the restraint, so far as it prevents the defendant from doing work for a rival of the complainant, outside of the installment clothing business, does the complainant no good—he derives no benefit from it—and that the only purpose its enforcement would serve would be to oppress the defendant. A contract of this class, which cannot be enforced without resulting in such consequences to one of the contracting parties, is, by the uniform course of decision on this subject, held to be unreasonable and void.

Is this contract subject to the fault imputed to it? At the argument I thought it was, and so intimated, but subsequent examination and consideration has resulted in a conviction that it is not. The defendant does promise that he will not serve any rival of the complainant, carrying on business in Newark or Jersey City, "in any capacity," but the broad meaning of these

words is plainly limited by other words of the contract. The restraint which the defendant put upon himself is expressed in these words : that " he will not engage in, or be concerned or interested in the installment clothing business in the city of Newark or Jersey City, on his own account, or as agent or employe of any other person or persons, in any capacity." It thus appears that the defendant's promise is that he will not take employment in a particular business in any capacity. When, therefore, the whole of the restrictive clause is read, it is made entirely plain that the restraint which the defendant put upon himself is not general, but partial, and that the only thing which he has. prevented himself from doing, after he ceases to be an employe of the complainant, is engaging in, or being concerned or interested in the installment clothing business. He cannot serve or assist a rival of the complainant in the prosecution of that particular business in any capacity, in either of the two cities named, but the interdiction is confined to that particular business. As to any other business or employment he is unbound and free. Anything outside of the installment clothing business he is just as much at liberty to do for a rival of the complainant as though he had not made the contract in question.

The next ground on which relief is resisted is, that the injury which the complainant has sustained, by the defendant's violation of his contract, is not irreparable, but can be fully and effectually redressed by the damages which may be recovered in an action at law. The ordinary and usual judicial remedy for a breach of contract is an action at law, and in cases where that remedy will fully answer the purposes of justice the law courts have exclusive jurisdiction, and courts of equity are entirely without jurisdiction. It is only in cases where the remedy at law will not fully answer the purposes of justice, but is plainly inadequate that a court of chancery may take jurisdiction and give relief. This is the only foundation on which the jurisdiction in equity, in this class of cases, rests, and it has no other. The rule laid down by Judge Baldwin, on this subject, in *Bonaparte* v. *Camden and Amboy R. R. Co.*, *1 Bald. C. C. 205, 217*, has been adopted generally, if not universally, as the true one. In

Sternberg v. O'Brien.

speaking of the manner in which a court of equity should proceed in deciding whether or not a proper case exists for the exercise of its prohibitory power, he said : "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity that never ought to be extended unless in cases of great injury, where the courts of law cannot afford an adequate or commensurate remedy in damages." This is one of the three rules regulating the granting of injunctions, which were declared, in the *Citizens' Coach Co.* v. *Camden Horse R. R. Co., 2 Stew. Eq. 299, 302,* to be of such paramount importance that the court should constantly keep them in mind and never disregard them. Though this rule was laid down by Judge Baldwin in deciding an application for a preliminary injunction, still there can be no doubt, in view of the principle on which the jurisdiction in equity rests in such cases, that his statement of the rule, so far as it limits the jurisdiction of courts of equity to cases of great injury, where the remedy at law is plainly inadequate to do full and complete justice, must be accepted as a correct exposition of the law, no matter at what stage of a cause, whether at the beginning or at the end, relief by injunction may be asked. And his caution against granting the writ in a doubtful case, where it can give but a slight protection to one party and may inflict an irreparable injury upon the other, applies with just as much force where the application for the writ is made on final hearing as it does to an application made at the commencement of the suit. No matter when the writ is applied for, to warrant its issue, in a case like the one now under consideration, three things must be clearly shown— *first,* that a valid contract has been violated in a material point ; *second,* that such violation has resulted, or will result, in serious injury ; and, *third,* that the remedy at law is plainly inadequate to do full and complete justice. A court of equity, in exercising its prohibitory power, must always proceed with the utmost caution and see to it that its power is not so exercised as to do more harm than good. The power exists to prevent irreparable

Sternberg v. O'Brien.

wrong, and should not, therefore, be used, in any case, when its use will produce the very result it was designed to prevent. The rule is fundamental that an injunction should never be granted when it will operate oppressively or contrary to the real justice of the case, or where it is not the fit and appropriate method of redress under all the circumstances of the case, or when the benefit it will do the complainant is slight in comparison with the injury it will do the defendant. The great office of the writ is to protect and preserve, not to destroy.

Testing the complainant's right to an injunction by the principles above stated, I think it is clear that this court cannot grant him what he asks without transcending its jurisdiction. He wants the court to restrain the defendant from working at a particular employment in two of the largest cities of the state. To many persons the right to labor is the most important and valuable right they possess; it is their fortune, constituting the only means they have to obtain food, raiment and shelter and to acquire property. To such persons a deprivation of this right is ruin, and to abridge it is to do them an injury which will very likely result in their ruin. When, therefore, a court is asked either to deprive a person of this right, or to abridge it, it is its duty, before it acts, to consider with the utmost care whether, if it does what it is asked to do, it will not, on a careful comparison of consequences, do more injustice than justice. The defendant, it is true, has broken his contract, but that fact, standing alone, presents no ground whatever for the interference of this court; indeed, scarcely more than would be presented by a case where the ground of action was a breach of warranty made on the sale of a horse. For a breach of contract the ordinary and exclusive remedy is an action at law, unless it is made clearly to appear that the damages resulting from it cannot be adequately compensated in money. In my judgment nothing of that kind appears in this case. It is neither averred nor proved that the defendant, while in the complainant's employ under the contract in question, occupied a position of special confidence towards the complainant, and thus acquired a knowledge of his business secrets and methods which he may now use so as to

benefit a rival and seriously injure the complainant. The defendant's contract required him to serve the complainant in carrying on the installment clothing business. That business, the proofs show, is conducted in this way : garments are deliv-ered to purchasers under contracts that 'the price agreed upon shall be paid in installments at short intervals—weekly or other short periods—and that the title to the garments shall remain in the vendor until all the installments have been paid. The defendant was employed as a collector. That is the employment specified in his contract. He was to go to the persons to whom garments had been' sold and collect the' installments as they became due. He was not employed as a salesman ; he made no sales ; nor was he required to render the complainant any service except to make collections from his customers. So that the only way he was brought in contact with the complainant's customers was in going to them to collect money from them. The bill alleges but a single ground of special injury, and that is this : that the knowledge which the defendant obtained of the complainant's customers, while he was in the complainant's employ, and the acquaintance he then made with them, has placed him in a position where he may exercise a strong influence over them in controlling their trade, and has put it in his power, by the exercise of such influence, to induce many of them to buy their garments hereafter of the rival house, where he is employed, and not of the complainant. But is this averment true ? It has not been proved. There is not a word of evidence going to show that the defendant possesses the slightest influence over a single one of the complainant's customers. His intercourse with them was of a kind which was much more likely to excite dislike and create antagonism than to inspire confidence or to give him popularity. His duty required him to be stern and exacting, to turn a deaf ear to all appeals for delay, and to insist that they should pay whether it was easy or convenient for them to do so or not. A faithful discharge of his duty necessarily, from the very nature of his employment, placed him in a position of hostility towards the complainant's customers, so that the presumption must be, in the absence of proof to the contrary, that

his intercourse with them did not result in his acquiring suffi-
cient influence over them to enable him to exercise any appreci-
able control over their trade. His intercourse with them, even
if he possessed unusual tact, was much more likely, as is obvi-
ous, to create feelings of dislike on their part than friendship,
and to make him unpopular rather than popular.

But there is another fact which, in my judgment, is decisive
against the complainant's claim that the damages he will sustain
by defendant's breach of his contract, cannot be adequately com-
pensated in money. The defendant's period of service under the
contract was less than five weeks. He served the complainant
under the contract just twenty-seven secular days. This time
was entirely too short, and his intercourse with the complainant's
customers much too slight and infrequent to enable him, even if
it be conceded that he possessed unusual magnetic power, to
acquire much influence over them; certainly not enough to put
it in his power to do the complainant any very serious injury.
He probably did not, during this period, have more than four
interviews with any one of them, and when the object of his
visits to them is remembered, it seems to me to be perfectly cer-
tain that the allegation that the defendant, when he left the com-
plainant, possessed sufficient influence over them to do the
complainant irreparable harm, by diverting their trade from him,
is a pure fancy, having no foundation in fact. If it is possible
for any damages to result to the complainant from this cause, it
seems to me to be entirely clear that they must be very insig-
nificant in amount. The case, as I view it, is completely devoid
of a single fact or circumstance tending to show irreparable
damage. The money value of the loss which the complainant
has sustained, or can sustain, by the defendant's breach of his
contract, can be computed, according to well-settled legal rules,
with almost perfect exactness. When that is the case the injured
party has no right to a remedy in equity, and this court no
power to give redress.

This conclusion makes it unnecessary to consider the other
grounds of defence. The complainant's bill must be dismissed,
with costs.