47 N.J. Super. 26 (1957)
135 A.2d 204
MALUAN P. GILPIN, PLAINTIFF-APPELLANT,
v.
JACOB ELLIS REALTIES, INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT, AND PEOPLES BANK AND TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, AND ESTHER BURD, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF WALTER BURD, DECEASED, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1957.
Decided October 15, 1957.
*28 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Addison C. Ely argued the cause for plaintiff-appellant (Messrs. Snevily & Ely, attorneys).
Mr. Roswell S. Nichols, Jr., argued the cause for defendant-respondent.
Mr. H. Frank Pettit argued the cause for defendant-appellant Esther Burd, executrix of Walter Burd, deceased.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiff appeals from a judgment of the Superior Court, Chancery Division, entered on final hearing below, which refused to grant the mandatory injunctive relief she had applied for. She had sought to have the court compel the defendant Jacob Ellis Realties, Inc. (herein called Ellis) to remove portions of a building erected on its premises in violation of a restrictive covenant. Instead the court awarded her, as against Ellis, permanent damages in the sum of $1,000 for the breach of the covenant. She contends on this appeal that the injunction should have issued, but if not, that she should have received a more substantial pecuniary award.
Plaintiff and Ellis own adjoining parcels of land, the title to which formerly stood in the names of Arthur S. Flagg and wife. In 1925 the Flaggs conveyed Ellis' parcel to The Pierson Company by deed containing the above-mentioned covenant reading as follows:
"The party of the second part [The Pierson Company], for himself and his heirs and assigns, hereby covenants and agrees to and with the said Arthur S. Flagg, his heirs and assigns, that if and *29 when a building shall be erected upon the lands above described, the southeasterly side wall thereof, above (sic) planed fifteen feet above the elevation of the northeasterly curb of Elm Street shall not at any point be within four feet of the southeasterly side line of the lands above described [this side line is the boundary line between Ellis' parcel and plaintiff's parcel], it being intended that an air space four feet wide, extending upward from a plane fifteen feet above the grade of the present curb, shall always be reserved for the benefit of the lands remaining to Flagg, this conveyance being made upon that condition."
The "lands remaining to Flagg," which we may for convenience designate the dominant tenement, were in 1932 conveyed to the plaintiff and her husband who has since died; and the lands deeded to The Pierson Company, the servient tenement, were in 1947 conveyed by the company to Ellis. In 1954 Ellis erected, in violation of the covenant, a store 25.30 feet high, extending right up to plaintiff's property line, thus blocking off the lower half of two windows on the second floor of the building on plaintiff's parcel, which windows are practically on the same line. There is no dispute upon the appeal but that this is a valid covenant, enforceable by the plaintiff against Ellis and breached by Ellis in that it failed to leave an air space four feet wide extending upward from a plane fifteen feet above the grade of the curb referred to. The dispute here is simply what should be the remedy.
The principal question of law raised by this dispute is whether plaintiff is entitled to a mandatory injunction. No plaintiff is entitled to such an injunction as of course, merely because of a violation of a covenant affecting real property, for which, to be sure, there is no adequate remedy at law. The allowance of injunctive relief is a discretionary matter, in that the court may be called upon to give or withhold relief depending upon variables, namely, the circumstances of the case.
One such circumstance affecting the decision in cases like the present would arise if Ellis' violation of the covenant had been wanton in character. Scuorzo v. Infantino, 104 N.J. Eq. 520, 523 (Ch. 1929); cf. 4 Restatement, Torts 710, 711 (1939). But there is no claim of that here. On the *30 contrary, at the time of the violation Ellis apparently had no knowledge of the covenant, except that imposed by the records. For even though its president had had actual knowledge of it in 1947 when Ellis acquired title to the property, he testified he had forgotten about the covenant until after the completion of the building, when it was called to his attention by Ellis' attorney in connection with a mortgage Ellis placed on the property.
A second such circumstance is laches. However, we shall assume that the plaintiff is not chargeable therewith. She never learned of the covenant until Ellis' building was completed, when Ellis' attorney called it to her attention (presumably in order to secure from her a release of the covenant). Nor does she have constructive notice of the covenant by virtue of the recording act, N.J.S.A. 46:21-1, since the covenant does not appear in her chain of title. Glorieux v. Lighthipe, 88 N.J.L. 199 (E. & A. 1915); Annotation, 16 A.L.R. 1013; 1 Thompson, Real Property, § 383 (1940); 8 Id. § 4453; but cf. 4 American Law of Property, § 17.24 (see also § 17.17) (1954); Higbee Fishing Club v. Atlantic City Electric Co., 78 N.J. Eq. 434 (Ch. 1911); William Dahm Realty Corp. v. Cardel, 128 N.J. Eq. 222, 227 (Ch. 1940); Ingling v. Public Service Elec. & Gas Co., 10 N.J. Super. 1, 9 (App. Div. 1950), referring to the "Telephone Company grant." However at three points of time she did observe the erection of the building which violated the covenant: when the offending wall was being laid, when it was partially completed, and when it was finished. Indeed, when the wall was partly up, she was told by some man who (in her words) "had something to do with the building," that the wall was to be 25 feet high, which, as she feared at the time, was of a height sufficient to obstruct partially window areas in the second floor. Notwithstanding this notice, she apparently did nothing at all about the matter until advised of the covenant by Ellis' attorney, as above stated. We shall, however, assume that her failure to act under the circumstances is not a material factor in the decision here.
*31 There are some cases in other jurisdictions where the courts, in weighing the relative equities of the parties under somewhat comparable circumstances, have taken into account the failure of one of the parties to act as a reasonable man with relation to the other. Christensen v. Tucker, 114 Cal. App.2d 554, 250 P.2d 660, 666 (Ct. App. 1952); Sisters of St. Joseph Corp. v. Atlas Sand, Gravel & Stone Co., 120 Conn. 168, 180 A. 303, 307 (Sup. Ct. Err. 1935); Kershishian v. Johnson, 210 Mass. 135, 96 N.E. 56, 57, 36 L.R.A., N.S., 402 (Sup. Jud. Ct. 1911); Raposa v. Guay, R.I., 125 A.2d 113, 118 (Sup. Ct. 1956). But the proofs and the findings here, with respect to both Ellis and the plaintiff, do not warrant any consideration by us of the question whether the carelessness of one of them should be a factor in the decision here, and indeed this question was apparently not presented below or on the appeal.
There were, however, other circumstances which induced the Chancery Division to deny a mandatory injunction, but they raise a question whether the doctrine of relative hardships is to be accepted in this State. The point to be resolved is whether the court should deny an injunction in a case where the economic benefit derivable by the plaintiff therefrom is grossly less than the expense which would thereby be put upon the defendant in carrying out the injunction. There is a substantial body of authority in this state holding that the doctrine cannot be invoked by way of defense when an injunction is sought (as it was in this case) on final hearing. (The cases dealing with a denial of a mandatory injunction where there is a violation of a property right, such as an equitable servitude, 5 Powell, Real Property, 145 (1956), and the cases dealing with a tort, such as, for example, a trespass on someone else's property through an encroachment, have been cited indiscriminately; it is difficult to draw a distinction between them where they all rest on property rights. Nuisance cases also are relevant in certain respects, and they too have been cited.) Dill v. Board of Education of City of Camden, 47 N.J. Eq. 421, 440 (Ch. 1890); Hennessy v. Carmony, *32 50 N.J. Eq. 616, 621-622 (Ch. 1892); Rowland v. New York Stable Manure Co., 88 N.J. Eq. 168, 176 (Ch. 1917); Tribune Association v. Simonds, 104 A. 386 (N.J. Ch. 1918); Consolidated Safety Pin Co. v. Town of Montclair, 102 N.J. Eq. 128, 131 (Ch. 1928), affirmed 103 N.J. Eq. 378 (E. & A. 1928); Cutrona v. Columbus' Theatre, 107 N.J. Eq. 281, 282 (Ch. 1930); Rayhertz Amusement Corp. v. Fulton Improvement Co., 124 N.J. Eq. 121, 127 (Ch. 1938); Benton v. Kernan, 127 N.J. Eq. 434, 468 (Ch. 1940), modified 130 N.J. Eq. 193 (E. & A. 1941); McCullough v. Hartpence, 141 N.J. Eq. 499, 503 (Ch. 1948); Sexton v. Public Service Coordinated Transport, 5 N.J. Super. 555, 561 (Ch. Div. 1949); Port of New York Authority v. City of Newark, 17 N.J. Super. 328, 334 (Ch. Div. 1952). Cf. Kirkpatrick v. Peshine, 24 N.J. Eq. 206, 216 (Ch. 1873), where the "breach of the covenant is intended"; Higgins v. Flemington Water Co., 36 N.J. Eq. 538, 546 (E. & A. 1883), dealing with the effect on defendant's customers (but cf. Restatement of Torts, § 942, supported by much authority, dealing with interests of third persons and the public); Gawtry v. Leland, 40 N.J. Eq. 323, 324 (E. & A. 1885); Supplee v. Cohen, 80 N.J. Eq. 83, 88 (Ch. 1912), affirmed 81 N.J. Eq. 500 (E. & A. 1913), explained in Rossi v. Sierchio, 30 N.J. Super. 575, 582 (App. Div. 1954).
On the other hand, there is at least as important a line of authority to the contrary, which sustains the doctrine of relative hardship: Higbee & Riggs v. Camden and Amboy R. and Transp. Co., 20 N.J. Eq. 435, 440 (Ch. 1870); Demarest v. Hardham, 34 N.J. Eq. 469, 475 (Ch. 1881); Sternberg v. O'Brien, 48 N.J. Eq. 370, 376 (Ch. 1891); Hemsley v. Marlborough House Co., 68 N.J. Eq. 596, 601 (E. & A. 1905); Sanford v. Keer, 80 N.J. Eq. 240, 248 (E. & A. 1912); Driver v. Smith, 89 N.J. Eq. 339, 355 (Ch. 1918), but cf. 347; Straus v. Loudenslager, 96 N.J. Eq. 678, 681 (E. & A. 1924); Scuorzo v. Infantino, 104 N.J. Eq. 520, 523 (Ch. 1929); Canda Realty Co. v. Borough of Carteret, 136 N.J. Eq. 550, 557 (Ch. 1945); Irvington *33 Varnish and Insulator Co. v. Van Norde, 138 N.J. Eq. 99, 104 (E. & A. 1946); see Rossi v. Sierchio, 30 N.J. Super. 575, 583 (App. Div. 1954); cf. Morris and Essex Railroad Company v. Prudden, 20 N.J. Eq. 530, 540 (E. & A. 1869); Erie Ry. Co. v. Delaware, Lack. & Western, and Morris & Essex R. Cos., 21 N.J. Eq. 283, 292 (Ch. 1871, C.J. Beasley sitting for the Chancellor); Simmons v. City of Paterson, 60 N.J. Eq. 385, 393 (E. & A. 1899); Law v. Smith, 68 N.J. Eq. 81, 90 (Ch. 1904).
Similar conflicts among the decisions will be found also in Massachusetts and Pennsylvania, in which jurisdictions the latest decisions refuse to sustain the doctrine of relative hardship. Gray v. Howell, 292 Mass. 400, 198 N.E. 516, 517 (Sup. Jud. Ct. 1935); Lynch v. Union Inst. for Savings, 159 Mass. 306, 34 N.E. 364, 20 L.R.A. 842 (Sup. Jud. Ct. 1893); but see Geragosian v. Union Realty Co., 289 Mass. 104, 193 N.E. 726, 96 A.L.R. 1282 (Sup. Jud. Ct. 1935); Westhampton Reservoir Recreation Corp. v. Hodder, 307 Mass. 288, 29 N.E.2d 913, 914 (Sup. Jud. Ct. 1940); Lizzo v. Drukas, 333 Mass. 242, 129 N.E.2d 892 (Sup. Jud. Ct. 1955). Elliott Nursery Co. v. Duquesne Light Co., 281 Pa. 166, 126 A. 345, 37 A.L.R. 793 (Sup. Ct. 1924); Kern v. Greensweig, 125 Pa. Super. 430, 190 A. 182, 185 (Super. Ct. 1937); but see Walters v. McElroy, 151 Pa. 549, 25 A. 125, 127 (Sup. Ct. 1892); Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, 57 A. 1065, 1071, 66 L.R.A. 712 (Sup. Ct. 1904); Kanefsky v. Dratch Const. Co., 376 Pa. 188, 101 A.2d 923, 927 (Sup. Ct. 1954); see Note, "Doctrine of Relative Hardship in Pennsylvania," 59 Dick. L. Rev. 243 (1955).
However the Restatement and the decided weight of authority in other jurisdictions do sustain the doctrine. Restatement of Torts, § 941 (1939); Restatement, Property, § 563 (1944); 6-A American Law of Property, § 28.17 (1954); McClintock, Equity, 383-393 (1948); Annotation, "Mandatory Injunction to Compel Removal of Encroachments by Adjoining Landowner," 28 A.L.R.2d 679, 699-705 (1953); but cf. 5 Powell, Real Property, 339, 340 *34 (1956); see Mechem, "The Peasant in his Cottage: Some Comments on the Relative Hardship Doctrine in Equity," 28 So. Cal. L. Rev. 139 (1955). In accord see, e.g., City of Harrisonville, Mo. v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 53 S.Ct. 602, 77 L.Ed. 1208 (1933) (Brandeis J. for the court); Hill v. Kimball, 269 Ill. 398, 110 N.E. 18, 26 (Sup. Ct. 1915); Bondy v. Samuels, 333 Ill. 535, 165 N.E. 181, 187 (Sup. Ct. 1929); Nitterauer v. Pulley, 401 Ill. 494, 82 N.E.2d 643, 649 (Sup. Ct. 1948); McCann v. Chasm Power Co., 211 N.Y. 301, 105 N.E. 416 (Ct. App. 1914); Andrews v. Cohen, 221 N.Y. 148, 116 N.E. 862, 863 (Ct. App. 1917); but cf. Whalen v. Union Bag & Paper Co., 208 N.Y. 1, 101 N.E. 805, 806 (Ct. App. 1913) (plaintiff, the owner of a farm, was damaged, to the extent of $100 a year, by polluted water from defendant's plant which represented an investment of more than $1,000,000. An injunction was issued; the court said it would not "deprive the poor litigant of his little property by giving it to those already rich").
The doctrine of relative hardship does not call for the mere balancing of conveniences on final hearing. Thus the fact that the harm to the defendant caused by the injunction will slightly exceed the benefit the plaintiff receives therefrom does not justify a denial of injunctive relief. For after all, the plaintiff is the owner of an equitable servitude, and the defendant has violated plaintiff's rights. Hence, a mere disproportion between the harm to the defendant and the benefit to the plaintiff will not warrant a refusal of such relief, where it is the sole reason offered by the defendant for the refusal, unless the disproportion is gross or of considerable magnitude. Plaintiff, it is to be observed, is not then left without any redress; she is given what plaintiffs are given in many types of cases  relief measured, so far as the court reasonably may do so, in damages. In the granting of such redress, there is no such disproportion between the harm to the defendant and the benefit to the plaintiff. Restatement, Property, § 563 and comments; Restatement, Torts, § 941 and comments.
*35 The doctrine is, we think, particularly applicable to a case, such as this, wherein we are dealing with two commercial properties; personal interests, or the pleasure that may be secured in the enjoyment of an equitable servitude of a certain type, is in no way involved.
In our view, therefore, the doctrine of relative hardship, as above expounded, is supportable as "the more equitable view." Rossi v. Sierchio, 30 N.J. Super. 575, 583 (App. Div. 1954). Is the doctrine applicable here? Judge Price found that currently it would cost Ellis $11,500 to remodel its building so as to bring it into conformity with the covenant. He also found in connection with the claim of Ellis' tenant that such remodeling would apparently lead to a substantial loss of rental, now due at the rate of $931.25 a month for the next seven years. The amount of this loss is in no way specified.
On the other hand, plaintiff claimed that by reason of the blocking off of the windows she had suffered a loss in the rental value of the second floor of her building amounting to $600 "in perpetuity." Her building was 46 years old, originally designed as a moving picture theater, and the second floor is unattractive and very much in need of renovation and has been practically unrented for a period of eight years prior to 1954, when Ellis erected the building. Ellis' expert witness testified that the second floor was "unrentable." Judge Price felt that he could not measure plaintiff's damages through an estimation of the loss in rental value where obviously plaintiff had very great difficulty in renting the premises. He accepted, instead, the proofs submitted on Ellis' behalf that the permanent damage to plaintiff's property came to $1,000. It must be remembered that on the erection of a building on Ellis' parcel, the equitable servitude was so designed as to leave plaintiff merely with a view of a wall four feet away from her upper story windows.
This damage to the plaintiff of $1,000 and the damage to Ellis of $11,500, added to whatever would be lost by Ellis in the way of the rental of its building, are so grossly *36 disproportionate in amount as to justify the denial of the mandatory injunction.
Plaintiff's second point on the appeal is that the award of $1,000 to the plaintiff to compensate her permanently for the violation of the covenant is inadequate. We cannot say that this is so. Disregarding the claim for $600 per annum in perpetuity  which for reasons already stated should be disregarded  we find no proofs in the case as to plaintiff's damages other than those, submitted on Ellis' behalf, showing, as stated, a loss of $1,000. Plaintiff asks to have the case remanded so that further evidence can be put in on her behalf establishing damages exceeding this sum. But this evidence should have been submitted at the trial, and we see no sufficient basis now for awarding a new trial in order to permit it to be offered.
Affirmed.