**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2104-24

RED ROSE INVESTORS LLC
d/b/a TOTOWA INVESTORS LLC,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

MC-FAM PROPERTY RTE. 3, LLC,

     Defendant/Third-Party
     Plaintiff-Respondent/
     Cross-Appellant,

v.

JF-TOTOWA DONUTS, INC. d/b/a
DUNKIN' DONUTS,

     Third-Party Defendant-
     Appellant/Cross-Respondent.

_____

     Argued May 20, 2026 – Decided June 8, 2026

     Before Judges Gummer, Paganelli, and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. C-000079-23.

Russell M. Finestein argued the cause for appellant/cross-respondent Red Rose Investors LLC d/b/a Totowa Investors LLC (Finestein & Malloy, LLC, attorneys; Russell M. Finestein, Michael D. Malloy and Daniel L. Finestein, on the briefs).

Alan R. Ackerman argued the cause for appellant/cross-respondent JF-Totowa Donuts, Inc. d/b/a Dunkin' Donuts.

Diana Powell McGovern argued the cause for respondent/cross-appellant MC-FAM Property Rte. 3, LLC (Gaccione Pomaco, attorneys; Diana Powell McGovern, on the briefs).

PER CURIAM

This appeal arises from a dispute between plaintiff Red Rose Investors LLC d/b/a Totowa Investors LLC (Red Rose), defendant/third-party plaintiff MC-FAM Property Rte. 3, LLC (MC-FAM), and third-party defendant JF-Totowa Donuts, Inc. d/b/a Dunkin' Donuts (JF-Totowa) concerning an easement that enabled JF-Totowa to use a portion of MC-FAM's property (Lot 4) to operate a drive-through window attached to a Dunkin' Donuts restaurant located on adjacent property (Lot 5) leased by Red Rose and subleased by JF-Totowa. Red Rose and JF-Totowa appeal from summary-judgment orders, dismissing plaintiff's claims the court should extend the temporal term of the

2

easement based on the language of the easement and the doctrine of relative hardship. They also appeal a post-trial order for judgment to the extent it required cancellation of the easement and vacation of the easement area. MC-FAM cross-appeals, challenging the damages award in the order of judgment. Reviewing de novo the trial court's summary-judgment and legal determinations and giving appropriate deference to its post-trial findings, we affirm.

I.

On July 1, 1993, D.D. Toto, L.P. (D.D. Toto) entered into a lease (1993 Lease) with Carmine Curcio for Lot 5, where it anticipated operating a Dunkin' Donuts restaurant. The 1993 Lease, commencing on December 1, 1993, spanned a twenty-year term with D.D. Toto having the option to extend it for two additional five-year terms.

On September 29, 1993, D.D. Toto and Madeline Freda, the owner of Lot 4, entered into a deed of easement (deed), granting D.D. Toto "an easement over and across" a twenty-foot-wide strip of land on Lot 4 "for the purpose of ingress and egress." According to Kenneth Friedman, who had negotiated the deed on D.D. Toto's behalf, D.D. Toto wanted the easement "to permit a drive-through lane on the side of the Dunkin' Donuts building." Paragraph two of the deed required D.D. Toto to pay Freda a fee "on a quarterly basis for the term . . . this Easement Agreement is in effect and as long as the Lease Agreement is in

3

effect." Paragraph two also contained a payment schedule, with a final payment period of August 1, 2018, to July 31, 2023. Paragraph three of the deed provided "[t]he term of this Easement Agreement shall run concurrently with a Lease between Carmine Curcio and D.D. Toto . . . and shall be for twenty (20) years, with two (2) five year options." The deed was "binding on the heirs, successors, transferees and assigns of the parties." It was recorded on August 2, 1994.

In 2008, MC-FAM purchased Lot 4. At the time of purchase, William McEntee, a member of MC-FAM, was aware of the existence of a thirty-year easement for the Dunkin' Donuts drive-through lane.

On November 21, 2013, Curcio entered into a lease with Red Rose for Lot 5 (2013 Lease). The 2013 Lease initially had a ten-year term commencing December 1, 2013, with two five-year extension options. About a year later, Curcio and Red Rose amended the 2013 Lease to provide for three additional ten-year option periods. Neither the 2013 Lease nor the 2014 amendment made any reference to the 1993 Lease.

On July 29, 2015, Red Rose entered into a sublease with JF-Totowa for Lot 5. Paragraph 15 of the sublease provided that, as a condition of the sublease, JF-Totowa would transfer and assign to Red Rose its rights and interests in the deed. On the same day, JF-Totowa entered into an "Assignment of Deed of Easement," assigning its interest in the deed to Red Rose. The assignment was

4

recorded on January 27, 2016. It is not clear from the record what, if any, interest JF-Totowa had in the deed in 2015. The record contains an October 22, 1997 document Red Rose's counsel described as "the Resolution authorizing sale of assets of D.D. Toto . . . to JF-Totowa."

On July 12, 2023, Red Rose filed a two-count complaint against MC-FAM. In count one, Red Rose conceded the deed provided it was "to remain in effect as long as the [1993] Lease [wa]s in effect and was to run concurrently with the term of the [1993] Lease, which provided for a term of twenty (20) years with two five-year options to extend the term" and that the deed "did not provide for a schedule of rents beyond the term of the [1993] Lease." Red Rose acknowledged that if the options to extend were exercised, the 1993 "Lease would run through July 31, 2023," and that Curcio had "entered into a new lease with Red Rose," which commenced on December 1, 2013. Red Rose nevertheless contended the parties to the deed intended it would "remain in effect if the lease for the Dunkin' Donuts was in effect." Red Rose anticipated a Dunkin' Donuts restaurant would continue to operate on Lot 5 "through at least 2033 and possibly through 2063."

In the second count, Red Rose asserted "[t]he continued use of the [e]asement [wa]s essential in operating the Dunkin' Donuts"; if it could not use the easement, Red Rose would have to remove a portion of the building on Lot

5

5, thereby incurring "a disproportionate remodeling expense and a rental loss"; and based on "the doctrine of relative hardship," the easement should remain in effect. Red Rose sought a judgment "[d]eclaring that the [d]eed . . . remain[] in effect for the term of the [2013] Lease, provided that [Red Rose] continues to pay a fair market rent" and determining what that rent should be.[1]

MC-FAM filed an answer, a counterclaim, and a third-party complaint against JF-Totowa. MC-FAM asserted claims for declaratory judgment, breach of contract, trespass, and unjust enrichment, alleging Red Rose and JF-Totowa continued to use the easement after its expiration without MC-FAM's consent. MC-FAM sought a judgment: dismissing the complaint; declaring the easement expired as of July 31, 2023; enjoining Red Rose, JF-Totowa, and "any third party operator" from using the easement; ordering removal of any improvements or encroachments "maintained or constructed" within the easement area; cancelling the deed of record with the county clerk's office; and awarding "damages for the fair and reasonable value of the use and enjoyment of the

---

[1] Alternatively, Red Rose sought a judgment compelling the sale of the easement area to Red Rose. However, Red Rose does not argue for that alternative relief on appeal. Instead, Red Rose asks this court to "declare that . . . the drive-through can be permitted to be used by Red Rose and Dunkin' Donuts upon continued payment of fair market rental." (Emphasis added).

[e]asement for the period of August 1, 2023 through the date of its ordered discontinuance," together with any interest and attorney's fees.

With leave of court, Red Rose filed an amended complaint, adding a third count in which it asserted a prescriptive easement existed over "a driveway that runs from Lot 5 to Lot 4 by use of a rear driveway opening between the two properties." Red Rose claimed "a right to continue to use the driveway and rear driveway opening" as necessary "to exit the rear of Lot 5 and egress to Lot 4 due to the prescriptive easement which has been created."

MC-FAM subsequently moved for summary judgment. Red Rose opposed the motion and cross-moved for summary judgment on counts two and three of the complaint. Red Rose submitted Friedman's certification. Friedman acknowledged he had no "specific recollection of any discussions with [Curcio] . . . as to the specific terms of the [d]eed . . . , including the length of the term," but stated "it was [his] understanding that as long as a Dunkin' Donuts was being operated, we would have an easement for the drive-through." JF-Totowa submitted the certification of its president, Ashwin Prajapati, in opposition to MC-FAM's motion and in support of Red Rose's cross-motion. He conceded that in the 2015 transactions between Red Rose and JF-Totowa, "[a]pparently, the termination date on the easement was overlooked."

After hearing argument on September 13, 2024, the court placed its decision on the record and entered orders granting MC-FAM's motion by dismissing the first count of the complaint and denying Red Rose's cross-motion. The court found the deed had "expired by its own terms when it was set to expire" and "[i]t wasn't extended." Accordingly, the court dismissed count one of the complaint. The court "recognize[d] that there is a hardship to the Dunkin' Donuts because [it] may lose [its] ability to operate a drive-through" but held it could not "make a better agreement than what [it] actually entered into." The court nevertheless declined to dismiss count two of the complaint at that time. The court did not dismiss count three, concluding an issue of fact existed regarding the prescriptive-easement claim.

At a September 26, 2024 pretrial conference, the court, with the parties' consent, reconsidered its denial of MC-FAM's motion as to count two of the complaint. The court found the doctrine of relative hardship did not apply and granted MC-FAM summary judgment as to count two of the complaint. The court subsequently entered a September 26, 2024 order memorializing its decision.

On September 30, 2024, the court conducted a trial regarding count three of the complaint and MC-FAM's counterclaim for the fair market rental value for the use of the easement area since August 1, 2023. Red Rose called as

8

witnesses Friedman; an expert in a land-use, architecture, and engineering; and a valuation and appraisal expert. MC-FAM presented the testimony of McEntee and an appraisal expert.

At the close of Red Rose's case, MC-FAM moved to dismiss count three of the complaint "based on its failure of proofs." The court granted the motion, finding "[t]he motion ha[d] to be granted" given the lack of evidence demonstrating "there was open and notorious use of this driveway for a period of thirty years."

On February 3, 2025, the court entered an order for judgment, dismissing count three of the complaint, directing the county clerk to cancel the deed, requiring JF-Totowa[2] to vacate the easement area by May 1, 2025, and awarding MC-FAM damages of $1,048.33 per month for the period from August 2023 through April 30, 2025, less any applicable credits. In an accompanying written decision, the court found the deed's schedule of annual fees for use of the easement area ended on July 31, 2023. To determine the amount of the fees Red Rose owed MC-FAM for its continued use of the easement area, the court considered competing testimony of the parties' appraisal experts. The court found MC-FAM's expert inexperienced in valuing this type of easement, his

---

[2] The court ordered "defendant" to vacate the easement area. We understand the court meant third-party defendant JF-Totowa.

analysis "fatally flawed" for multiple reasons, and his testimony lacking in credibility. Accordingly, the court "largely disregarded [his testimony] in favor of the more reasonable, credible testimony of" Red Rose's expert. Although crediting Red Rose's expert's methodology, the court adjusted the capitalization rate he had utilized in determining the amount of fees owed.

Red Rose and JF-Totowa filed notices of appeal, stating they were appealing from the September 13 and 26, 2024 orders and the February 3, 2025 order for judgment "to the extent it orders the [e]asement to be canceled and requires the vacation of the easement area by May 1, 2025." Red Rose expressly stated in its merits brief it was not appealing the court's dismissal of the prescriptive-easement claim in count three of the complaint. JF-Totowa did not indicate in its notice of appeal that it was challenging that dismissal and did not brief that issue. Accordingly, we deem that issue waived. See Morris v. T.D. Bank, 454 N.J. Super. 203, 206 n.2 (App. Div. 2018) ("An issue not briefed is deemed waived on appeal."). MC-FAM cross-appeals the damages award in the February 3, 2025 order for judgment. We granted Red Rose's motion for a stay pending this court's disposition of the appeal.

On appeal, Red Rose and JF-Totowa argue the court erred in granting MC-FAM summary judgment on count one of the complaint because the deed should be read to provide an easement for a drive-through for as long as a Dunkin'

Donuts restaurant is operated on Lot 5. They contend the court erred in granting MC-FAM summary judgment on count two of the complaint because the court should have applied the doctrine of relative hardship to permit the continued use of the easement area for the drive-through. In its cross-appeal, MC-FAM argues the court failed to provide fair-market rent in its damages award. Unpersuaded by those arguments, we affirm.

## II.

We address first Red Rose's and JF-Totowa's appeals of the summary-judgment orders. "We review a grant of summary judgment de novo, applying the same standard that governed the trial court's determination." Padilla v. Young Il An, 257 N.J. 540, 547 (2024). Summary judgment is proper if, viewing the evidence in a light most favorable to the non-moving party, the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)).

"An easement is an interest in the land of another affording a right to use the other's land." Caribbean House, Inc. v. N. Hudson Yacht Club, 434 N.J. Super. 220, 226 (App. Div. 2013) (quoting Krause v. Taylor, 135 N.J. Super. 481, 484 (App. Div. 1975)). An easement may "be created for a fixed term or

A-2104-24

for the accomplishment of a specific purpose."  Eggleston v. Fox, 96 N.J. Super. 142, 147 (App. Div. 1967).

The interpretation and creation of an easement is typically subject to traditional principles of contract law.  See Rosen v. Keeler, 411 N.J. Super. 439, 451-52 (App. Div. 2010) (applying contract-interpretation principles to an easement).  The plain meaning of a grant of easement "will control without resort to artificial rules of construction" if "the meaning is plain, as derived from the language read as an entirety and in the light of the surrounding circumstances." Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 605 (1964).  "Questions concerning the extent of the rights conveyed by an easement require a determination of the intent of the parties as expressed through the instrument creating the easement, read as a whole and in light of the surrounding circumstances."  Rosen, 411 N.J. Super. at 451; see also Scaduto v. Dep't of Env't Prot., 474 N.J. Super. 427, 437 (App. Div. 2023).  "[W]hen the intent of the parties is evident from an examination of the instrument, and the language is unambiguous, the terms of the instrument govern."  Rosen, 411 N.J. Super. at 451 (alteration in original) (quoting Hyland v. Fonda, 44 N.J. Super. 180, 187 (App. Div. 1957)).  If, however, "the language of the grant is ambiguous, the surrounding circumstances, including the physical conditions of the servient

tenement and the requirements of the grantee, play a significant role in the determination of the controlling intent." Ibid.

In this case, the terms of the deed clearly provided that the easement terminated with the end of the 1993 Lease. If the parties to the deed had intended the easement to last as long as a Dunkin' Donuts restaurant operated on Lot 5, they could have included that term in the deed. Instead, they expressly linked the existence of the easement to the "Lease between Curcio and D.D. Toto," which is the 1993 Lease, and set forth a payment schedule up to 2023, the last year the 1993 Lease could be in effect. We perceive no ambiguity in that contractual language.

That the trial court had "a question in [its] mind about . . . whether that [language] contemplates covering subsequent operators of that property" does not alter our conclusion. Pursuant to the "successors" provision of the deed, a "subsequent operator" of Lot 5 may have had a right to use the easement area if it was a successor of D.D. Toto. But that portion of the deed did not alter the provision limiting the deed's temporal term to the existence of the 1993 Lease. Thus, those succeeded rights lasted only as long as the 1993 Lease was in effect. The 1993 Lease, however, is no longer in effect, and, as the court recognized, it is undisputed Curcio entered into a new lease with Red Rose in 2013.

Red Rose and JF-Totowa rely on Friedman's certification to establish the purported intent of the parties to the deed. That reliance is misplaced. Well-settled contract law establishes that courts look to the language of the contract to determine the parties' intent. See Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020). Courts consider parole evidence, like an individual's certification, only when the contract language is ambiguous. Ibid. That principle of contract interpretation applies equally to the interpretation of an agreement creating an easement. See Rosen, 411 N.J. Super. at 451. Perceiving no ambiguity in the language of the deed, we consider the deed's language to determine the parties' intent, not Friedman's certification. Even if we considered Friedman's certification, it demonstrates only his own personal understanding and not the parties' intent.

Accordingly, we affirm the September 13, 2024 order granting MC-FAM summary judgment on the first count of the complaint and dismissing that count with prejudice.

The doctrine of relative hardship is "an equitable doctrine." Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 154 (App. Div. 2013). The doctrine "is particularly applicable . . . where the plaintiff has an adequate alternative remedy of damages and where the court is not dealing with 'personal interests' involving the pleasure of a property owner in

the enjoyment of his land." Roehrs v. Lees, 178 N.J. Super. 399, 410 (App. Div. 1981) (quoting Gilpin v. Jacob Ellis Realties, Inc., 47 N.J. Super. 26, 35 (App. Div. 1957)). A court may appropriately apply the relative hardship doctrine "where both parties are personally blameless, an injunction works a great hardship on the encroacher, and money damages suffice for the victim." Szymczak v. LaFerrara, 280 N.J. Super. 223, 230 (App. Div. 1995) (citing Restatement (Second) of Torts § 941, cmts. a-c (A.L.I. 1979)).

In considering whether an injunction would "work[] a great hardship on the encroacher," ibid., a court may deny injunctive relief under the doctrine "where the benefit to [the party seeking the injunction], if it were issued, would be 'grossly less than the expense which would thereby be put to the [other party] in carrying out the injunction.'" Roehrs, 178 N.J. Super. at 410 (quoting Gilpin, 47 N.J. Super. at 31). Whether to grant injunctive relief "involves the exercise of sound discretion by the trial judge in the light of the circumstances of the case." Ibid.

As to a damages remedy, "money damages suffice for the victim," particularly "in 'a case of dispossession of land by an encroaching building' where 'there is a market that affords a standard of values, sale value or rental value, by which to measure damages . . . does not arise from any uncertainty.'" Szymczak, 280 N.J. Super. at 230 (quoting Restatement (Second) of Torts § 944,

cmt. d). However, courts that have applied the doctrine of relative hardship to impose "less extreme remedies, such as damages . . . , which do not result in destruction of the improvements[,] . . . all seem to require either a mutual mistake, not a unilateral mistake, or some inequitable conduct by the party seeking the injunction." Id. at 228.

Balancing the equities, we discern no error or abuse of discretion by the court in declining to apply the doctrine of relative hardship under the circumstances of this case. The deed was recorded in 1994. No party asserts it was unaware of the existence of the deed. Despite that knowledge, Red Rose and JF-Totowa proceeded with their respective transactions. McEntee understood when MC-FAM purchased Lot 4 that the term of the easement for the Dunkin' Donuts drive-through lane was thirty years. According to McEntee, he previously consulted with experts regarding the development of Lot 4 without the easement and believes that development would have a "greater income potential."

Red Rose and JF-Totowa do not seek to purchase Lot 4, unlike the plaintiffs in Szymczak, who sought to acquire the encroached property and fairly compensate the defendant owners of the property. Ibid. Nor do they seek a limited time period in which to extend their use of the easement area. Instead, they contend that the doctrine should be applied so that they can use the

easement area for as long as a Dunkin' Donuts restaurant operates on Lot 5, which, according to Red Rose, could be "through at least 2033 and possibly through 2063." And it could be longer. Red Rose and JF-Totowa essentially seek to impose on MC-FAM an endless lease of the easement area. On that record, we agree with the court's decision not to apply the doctrine and affirm the September 13, 2024 order denying Red Rose's cross-motion for summary judgment, the September 26, 2024 order granting MC-FAM summary judgment on count two of the complaint, and the provisions of February 3, 2025 order for judgment requiring the cancellation of the deed and the vacation of the easement area.

Finally, we address MC-FAM's cross-appeal. We "review a 'trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). We shall "not disturb the factual findings and legal conclusions of the trial judge unless convinced that those findings and conclusions were so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence so as to offend the interests of justice." Whiteman v. Twp. Council of Berkeley Twp., 261 N.J. 106, 122 (2025) (quoting Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228

N.J. 596, 619 (2017)). "Th[is] standard is particularly significant in valuation disputes, which frequently become battles between experts." <u>Balsamides v. Protameen Chems., Inc.</u>, 160 N.J. 352, 368 (1999).

MC-FAM has not met that standard in its cross-appeal. We see no basis to disturb the findings the court issued following the bench trial, including its credibility determinations. Accordingly, we affirm the damages award in the February 3, 2025 order for judgment.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2104-24